712 A.2d 229

ERNEST H. SUTKOWSKI AND JEANNE B. SUTKOWSKI, PLAINTIFFS–APPELLANTS, v. DIRECTOR, DIVISION OF TAXATION, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued April 7, 1998—Decided June 15, 1998.

---

[1] The victim also indicated a knife was used but was unable to identify the knife recovered from defendant as the knife used during the robbery.

Before Judges KEEFE, PAUL G. LEVY and WECKER.

*Jeffrey M. Schwartz* argued the cause for appellants (*Saiber, Schlesinger, Satz & Goldstein,* attorneys; *Mr. Schwartz,* on the brief).

*Joseph Fogelson,* Deputy Attorney General, argued the cause for respondent (*Peter Verniero,* Attorney General of New Jersey, attorney; *Joseph L. Yannotti,* Assistant Attorney General, of counsel; *Mr. Fogelson,* on the brief).

The opinion of the court was delivered by

KEEFE, J.A.D.

The issue to be decided is whether a resident New Jersey taxpayer who receives a distribution from a New York subchapter S corporation of which he is the sole stockholder is entitled to a tax credit on his 1991 New Jersey Gross Income Tax (GIT) return for taxes paid to New York by the corporation.

The Director of the New Jersey Division of Taxation (Director) gave the taxpayer, Ernest H. Sutkowski (taxpayer), a partial credit.[1] The taxpayer disagreed with the Director's final determination and filed a complaint in the Tax Court, challenging the Director's methodology and seeking an order declaring that the entire amount of the 1991 S corporation distribution was available for computation of the tax credit. The matter was submitted to

---

[1] Both Ernest H. and Jeanne B. Sutkowski are the plaintiff taxpayers in this litigation because they filed a joint return. All activities which give rise to the issue before the court, however, relate to Ernest's relationship with the New York corporation. Therefore, all references herein will be to the "taxpayer" in the singular and shall refer to him.

the Tax Court judge on stipulated facts. The issue on which the parties submitted briefs focused on the question of whether the Director's or the taxpayer's methodology for treating subchapter S distributions was correct. There were ancillary issues concerning computation of the credit once the methodology was determined.

In a reported opinion, the Tax Court judge disagreed with both methodologies. *Sutkowski v. Director*, 16 *N.J. Tax* 231 (Tax 1996). The judge concluded that the taxpayer was not entitled to any credit because the distribution by the New York S corporation was not taxed in New York so as to make it eligible for the credit. The taxpayer appeals from the Tax Court judgment. We reverse the judgment under review for the reasons stated herein and direct the Division of Taxation to give the taxpayer full credit for the 1991 New York S corporation distribution and remand the matter to the Division for computation of the credit.

Taxpayer is an employee and sole stockholder of The Westchester Business Institute (WBI), a New York corporation that elected subchapter S treatment for New York and federal income tax purposes. For federal and New York tax purposes, earnings and losses from S corporations are passed through to shareholders to be reported on their individual tax returns in the tax years those items accrue to the corporation, regardless of whether the net profits are actually distributed. *I.R.C.* § 1366; *N.Y. Tax Law* § 617(b).

New Jersey taxes gross income which is defined in the GIT Act. *N.J.S.A.* 54A:5-1. Prior to 1993, New Jersey did not recognize S corporations.[2] Accordingly, for the tax year in question, income from S corporations was not taxed under the GIT Act until

---

[2] New Jersey began recognizing such corporations for taxable years beginning after July 7, 1993. *L.*1993, *c.*173, § 19. S corporation income shall now be taxed to the shareholder in accordance with the shareholder's *pro rata* interest in the corporation, whether or not distributed, for the S corporation's taxable year. The problem presented by this appeal, therefore, will not recur after the 1993 tax year.

distributed to a New Jersey resident shareholder. Thus, distributions from S corporations were treated in the same manner as dividends from regular corporations (C corporations). *Laurite v. Director, Div. of Taxation,* 12 *N.J. Tax* 483, 489 (Tax 1992), *aff'd,* 14 *N.J. Tax* 166 (App.Div.1993), *certif. denied,* 135 *N.J.* 301, 639 *A.*2d 301 (1994). Dividends are considered a form of gross income and were then defined as "any distribution in cash or property made by a corporation, association or business trust, (1) out of accumulated earnings and profits, or (2) out of earnings and profits of the year in which such dividend is paid." *N.J.S.A.* 54A:5–1(f).

■ The GIT Act also provides New Jersey residents with a credit for income tax paid to other states. *N.J.S.A.* 54A:4–1 then provided in relevant part:

(a) A resident taxpayer shall be allowed a credit against the tax otherwise due under this act for the amount of any income tax or wage tax imposed for the taxable year by another state of the United States ... with respect to income which is also subject to tax under this act.

(b) The credit provided under this section shall not exceed the proportion of the tax otherwise due under this act that the amount of the taxpayer's income subject to tax by the other jurisdiction bears to his entire New Jersey income.

The purpose of the resident income tax credit is to minimize or avoid double taxation of New Jersey residents' gross income that is also subject to tax in the same year in another state. *Ambrose v. Director, Div. of Taxation,* 198 *N.J.Super.* 546, 552, 487 *A.*2d 1274 (App.Div.1985). The formula for calculating the credit is expressed as a fraction.

$$\frac{\text{New Jersey income subject to Tax by another State}}{\text{Entire New Jersey income}} \times \frac{\text{Tax due under New Jersey GIT}}{} = \text{Tax Credit}$$

[*Id.* at 550, 487 *A.*2d 1274; *see also N.J.S.A.* 54A:4–1(b).]

The parties to this litigation agree on the amount of the denominator of the fraction; the tax due under the GIT if no credit is due; and a portion of the numerator of the fraction.

They also agree that the distribution to the taxpayer from the S corporation in 1991 was a "dividend" for GIT purposes and should be a part of the denominator. The disagreement, at least between the Director and the taxpayer, is how much of the dividend distribution should be included in the numerator.

The dispute before the Tax Court centered on the differing methodologies employed by the Director and the taxpayer in determining how much of the distribution was subject to New York income tax in 1991. The taxpayer contended that, in determining the source of the dividends paid by the S corporation to him in 1991, the Director should have looked to WBI's earnings for 1991. Those earnings were sufficient to cover the distribution paid to the taxpayer in the same year, and, therefore, the taxpayer contended that the dividend distribution (income) represented the same money taxed by New York as earnings (income), albeit under a different label. This method has been referred to as the last-in, first-out rule, or "LIFO." This is the same methodology used to trace the source of dividends under federal tax principles. *I.R.C.* §§ 301, 316, 1368. If this method is applied, the taxpayer is entitled to a credit for tax paid to New York, and the entire dividend distribution is part of the numerator. The Director, on the other hand, took the position that, if, in the year of distribution, the distributing corporation had both current earnings from the tax year in which the distribution was made, as well as earnings accumulated from prior years, the dividend is deemed by the Division to have been made first from accumulated earnings. The Director's method has been referred to as the first-in, first-out rule, or "FIFO." Employment of this method reduces the amount of the numerator and decreases the tax credit.[3]

With this background, we now put the dispute into numbers in accord with the stipulation of the parties as submitted to the Tax

---

[3] In effect then no resident taxpayer will receive full credit from the S corporation distribution unless the S corporation strips itself of retained earnings each year, an extremely unlikely event.

Court. Because the taxpayer was the sole owner of WBI stock, his share of WBI's 1991 income subject to New York tax was 100%. WBI's total taxable New York income in 1991, on which tax was in fact paid, was $1,184,500. It consisted of $1,132,654 of S corporation trade or business income and $51,846 of S corporation passive interest income.

The taxpayer received four distributions from WBI during the course of 1991 totalling $1,031,065. Those distributions were reported by the taxpayer on his GIT return as dividend income because they were distributions made out of WBI's earnings and profits. *N.J.S.A.* 54A:5–1f. In addition to the dividends, the taxpayer reported his wages from WBI of $682,246, interest income of $116,092, and other dividends of $29,342, for a total of $1,858,745.[4] This latter number, by stipulation, became the denominator of the fraction in the above mentioned formula. The taxpayer's GIT liability without reference to any credit for taxes paid to New York was $126,267. The parties also stipulated that the numerator of the fraction included the taxpayer's New York wages of $629,537 and "at least a portion of the $1,031,065 dividend distribution."

Although the parties stipulated that WBI had 1991 earnings in excess of the dividend distributed to taxpayer, they disagreed as to the portion of the distribution that should be included in the numerator. As mentioned earlier, the taxpayer contended that all of it should be included, while the Director took the position that WBI's "January 1, 1991 NJ Accumulated E & P" must first be charged against the distribution so that the disputed part of the numerator would be "the excess of (1) $1,031,065, minus (2) the amount of WBI's January 1, 1991 NJ Accumulated E & P." The parties also disputed what the amount of WBI's accumulated E & P was as of January 1, 1991. The taxpayer contended that it was $228,139, while the Director contended that it was $380,239, as

---

[4] The taxpayer properly did not include in his GIT the $51,846 of passive S corporation income on which he paid tax in New York.

reflected on a balance sheet submitted by the WBI to the Accrediting Counsel for Independent Colleges and Schools.

As can readily be seen, the parties' stipulation requested the Tax Court to decide which of the two methodologies advanced best represented the Legislature's intent in the enforcement of the resident tax credit provision of the GIT and, depending on how that issue was resolved, several specific issues relevant to the actual calculation of the formula. The Tax Court, however, did not decide the issues submitted for resolution in accordance with the stipulation and the parties' briefs on those issues. Instead of deciding how much of a credit the taxpayer was entitled to under the GIT Act, the Tax Court held that the taxpayer was not entitled to any tax credit with respect to the tax paid in New York in 1991.

The holding of the Tax Court can be summarized as follows: WBI's $1,184,500 of "income" and the taxpayer's receipt of $1,031,065 of cash "dividends" were not the same taxable events; in New York, the taxable events were those that resulted in WBI earning $1,184,500 of S corporation income in 1991; in New Jersey, the taxable events were the taxpayer's receipt of cash dividends in 1991.

Although the Tax Court's interpretation of the resident credit statute is quite different from the Director's interpretation, the Director now adopts the Tax Court's interpretation.[5] The Director describes the Tax Court holding in his brief in these words: "Simply put, the (taxpayer was) not entitled to any Resident Credit with respect to the WBI Distributions because New Jersey taxed the distribution of cash to Mr. Sutkowski, while New York did not, and New York taxed the (taxpayer) on the income earned in 1991 by WBI (whether or not distributed to Mr. Sutkowski), while New Jersey did not."

---

[5] In fairness to the Director, his policy prior to 1991 was to interpret the resident tax credit in such cases to afford no credit for such a dividend distribution. *See Laurite, supra,* 12 *N.J. Tax* at 488–89.

Thus, according to the Tax Court's reasoning, it did not matter whether WBI had retained earnings from past years or not. Even if WBI had distributed all of its S corporation earnings on which tax was paid in New York in every year of its existence, the distribution of the after tax income (dividends) to the taxpayer would be taxed in New Jersey and would result in no credit. Thus, under the Tax Court's opinion, no tax credit can ever be taken by a New Jersey resident taxpayer who receives an S corporation distribution in the same year that a tax on the corporation's earnings has been paid in another state. According to that decision, the presence or absence of retained earnings in the S corporation is irrelevant.

For example, if we assume WBI retained no earnings since its inception, and its S corporation earnings for 1991 were $1,000, for which the taxpayer paid a New York income tax, and we further assume WBI distributed the after tax money to the taxpayer in the same year, the taxpayer would pay a GIT tax on the money distributed as a dividend, but no tax credit would be available even though the two taxes were essentially on the same money. That result is required, according to the Tax Court, because the New York tax is on "income," while the New Jersey tax is on the distribution as a "dividend." The fact that the money being taxed in New York and New Jersey is the same money was apparently of no importance to the Tax Court.

■ We do not believe the Legislature envisioned such a result. In our view, the Tax Court lost sight of the unambiguous words of the statute and the legislative principle that undergirds the resident tax credit. The legislative intent was to avoid double taxation of "income" which, but for the credit, would be taxed both in New Jersey and another state. The credit to be given is with respect to any *"income* tax . . . imposed for the taxable year by another state . . . with respect to *income* which is also subject to tax under this act." *N.J.S.A.* 54A:4–1(a) (emphasis added). The resident tax credit provision does not focus on the taxable event or the label placed on a given source of income. Simply stated, if the

same income is taxed in another state and in this state for the same tax year, the Legislature intends the New Jersey resident taxpayer to receive a credit for the tax paid in the other state. Although the "income subject to tax" in the GIT is labeled "dividends," the fact of the matter is that it is still "income," and if it is the same money that is being taxed in New York under the label of "net income" in the same tax year, the Legislature has contemplated that a credit should be given.

The Director defends the Tax Court's interpretation of the resident tax credit provision of the GIT Act in this case as being consistent with a rule of construction which requires that statutory exceptions to our tax laws be narrowly construed. In doing so, the Director relies upon *GE Solid State v. Director, Div. of Taxation,* 132 *N.J.* 298, 625 *A.*2d 468 (1993). That case is distinguishable from the case under consideration. In *GE Solid State,* the Court held that "*tax exemptions* are to be strictly construed against the claimant." *Id.* at 306, 625 *A.*2d 468 (emphasis added). This case does not involve an exemption from tax; it involves a tax credit. There is a vast difference between escaping the obligation to pay a tax and paying a tax, albeit a reduced amount, because of a credit. The taxpayer here recognizes that he must pay a tax on the distribution; he simply seeks a credit for taxes paid to New York.

The duty of the Director, and this court, is to give meaning to the wording of the statute and, where the words used are unambiguous, apply its plain meaning in the absence of a legislative intent to the contrary. *Id.* at 307, 625 *A.*2d 468. Even if there is an ambiguity attendant to the issue of a tax credit, the rule of construction is one that favors the taxpayer, not the government. As the Tax Court said in *Buckley v. Director, Div. of Taxation,* 5 *N.J. Tax* 366 (Tax 1983):

> The principles of statutory interpretation dictate that all statutes be construed in light of their purposes and objects and that tax statutes be construed most strongly against the government and in favor of the taxpayer where there is doubt or ambiguity.

[*Id.* at 369 (citing *American Can Co. v. Director, Div. of Taxation,* 87 *N.J.Super.* 1, 207 *A.2d* 699 (App.Div.1965)).]

In *Allen v. Director, Div. of Taxation,* 14 *N.J. Tax* 385 (Tax 1994), *aff'd,* 15 *N.J. Tax* 704 (App.Div.1996), the Tax Court held that an interpretation of the resident tax credit provision by the Director failed to attain the legislative objective of avoiding multiple state taxation and was unduly restrictive. Accordingly, the Director's interpretation was rejected, even though it was "administratively simpler, enhance[d] revenue and restrict[ed] the benefit of the credit." *Id.* at 393.

The Director also contends that allowing the taxpayer a resident tax credit in these circumstances would create an unwarranted distinction between New Jersey resident shareholders of corporations that elect to be taxed as S corporations and resident shareholders of corporations that do not elect to be taxed as such. Aside from pointing out that this was not the Director's view in his argument before the Tax Court, the simple answer is that the Legislature intended to avoid multiple state taxation of "the same income." If, as a result of a corporation's election to be taxed as an S corporation, another state's tax on the income of that corporation causes a New Jersey resident shareholder to be subjected to tax on the same income in the same tax year, the Legislature's intent was to give the New Jersey shareholder a credit toward the payment of the New Jersey GIT. It is not for the Director or this court to second guess the Legislature's wisdom.

## II.

The Director has taken a fall-back position in this appeal. The Director contends that if we disagree with the Tax Court, as we have done in Part I of this opinion, and hold that the taxpayer is entitled to a resident credit to the extent that the 1991 dividend contribution can be deemed to have been made out of WBI's 1991 earnings and profits corresponding to WBI's $1,184,500 of 1991 S corporation income subject to tax in New York, then we should

limit the taxpayer's total resident credit to $97,302, rather than the $112,807 that is claimed.[6] This argument follows from the Director's initial position before the Tax Court that the FIFO accounting rule he has adopted to track which earnings and profits are deemed to have been the source of the dividend distribution in a given tax year is a valid interpretation of the GIT Act and entitled to deference. This presents a much more difficult question than the question of whether there should be a credit at all.

Prior to 1991, a New Jersey resident was not permitted to take a credit for gross income tax paid to another state on dividends distributed from an out-of-state S corporation. Such distributions were deemed to be either dividends from C corporations includable in the New Jersey resident's gross income pursuant to *N.J.S.A.* 54A:5–1f or returns on capital from the taxpayer's investment in the S corporation. *Laurite, supra,* 12 *N.J. Tax* at 490. In 1991, however, the Director promulgated a new policy regarding the calculation of the resident income tax credit with respect to such distributions. *Ibid.* (citing 20 *State Tax News* 1, 10–13 (Jan/Feb.1991)). According to the Director,

> Distributions of a corporation's earnings to its shareholders are dividends and are taxable under the Gross Income Tax Act in the year in which they are received by the shareholder. Income of a corporation, on the other hand, is not subject to tax under that act. Generally, a credit for taxes paid to another jurisdiction will not be available to a New Jersey resident who is a shareholder of a New York S Corporation (or any other state that recognizes S Corporations and taxes the individual on S corporate income) for taxes paid to the State of New York (or any other state) on the taxpayer's distributive share of the corporation's income. However, not inconsistent with the above but rather a further clarification thereof, where a taxpayer can prove to the satisfaction of the Director that all *or part* of the taxpayer's share of the S Corporation's *income on which taxes were paid by the taxpayer to a qualified other jurisdiction were included or are otherwise indica-*

---

[6] By coming to a final figure relative to the credit to be given regardless of the outcome of this discussion, the Director has conceded, "[s]olely for the purposes of the decision in this case, [he] will treat WBI's New Jersey earnings and profits as equal to its FIT (federal income tax) earnings and profits." Previously, the Director had taken the position that such New Jersey earnings and profits should be computed in accordance with generally accepted accounting principles, rather than the computation permitted by *I.R.C.* § 312.

*tive of the dividend distribution* subject to the New Jersey Gross Income Act, that amount will be recognized in the calculation of the credit for taxes paid to other jurisdictions.

Stated differently, only that amount of the taxable dividend that represents a "distribution ... made by a corporation ... out of earnings and profits of the year in which such dividend is paid" can be recognized in the calculation of the credit for taxes paid to other jurisdictions.

[*Ibid.* (emphasis added)(other alterations in original) (quoting *State Tax News, supra*, at 11).]

While the Director referred to this new "policy" as a "modified" position, it was much more than that. *Id.* at 491. Rather, it was a recognition for the first time that the earnings of an S corporation subject to tax in another jurisdiction as income could be the same money actually distributed to a New Jersey shareholder because a S corporation's distributions are treated as a dividend on the GIT return. Notwithstanding that recognition, however, the policy further stated:

In determining whether income distributed and taxed as a dividend by New Jersey was taxed in the same year as S Corporation income by another state, the Division will assume that distributions are paid first out of prior years' earnings.... The distribution will be deemed to be paid out of current year's earnings to the extent that the cash distribution ... exceeds prior years' earnings....

[*Ibid.* (alterations in original) (quoting *State Tax News, supra*, at 12).]

In other words, the Director announced his intention to adopt the FIFO method for tracking the source of the dividend distribution in order to determine whether it was the same income as that being taxed in the other state.

Although the 1991 policy was not directly in issue in *Laurite, supra*, the case discussed the use of the FIFO method in the context of prior policy and pre–1991 distributions. In that case, as in this case, the taxpayer contended that the LIFO method was the preferred treatment for such distributions because that methodology accords with federal corporate tax requirements governing distributions from C corporations. 12 *N.J. Tax* at 486–87. The Tax Court rejected that argument and approved the Director's choice of the FIFO method in these words:

The court may not, without legal justification, substitute another method of calculation for that of the Director. The fact that there is another method of

calculation that may be preferable, alone, does not justify rejecting the method used by the Director.

[*Id.* at 493 (citing *Estate of Darrin v. Director, Div. of Taxation,* 11 *N.J. Tax* 482, 489–90 (Tax 1991)).]

As noted earlier in this opinion, *Laurite* was affirmed by this court and certification was denied by the Supreme Court. The tempting response to the taxpayer's argument against the Director's methodology in light of *Laurite* is simply to say that the issue has been resolved, and direct the Division to give the resident tax credit proposed in the Director's alternative argument. We believe, however, that the taxpayer has advanced compelling arguments in this appeal that were not before the Tax Court in *Laurite* and require us to re-examine that decision.

The GIT Act, at the relevant time period, did not specifically address how distributions to New Jersey resident shareholders from out-of-state S corporations were to be treated. *Laurite, supra,* 12 *N.J. Tax* at 489. In defining what constituted gross income for tax purposes, the GIT Act simply stated that dividends were a form of gross income and consist of "any distribution in cash or property made by a corporation ... (1) out of accumulated earnings and profits, or (2) out of earnings and profits of the year in which such dividend is paid." *N.J.S.A.* 54A:5–1f. While the Director relies to some extent on the wording of the statute to justify his FIFO method, we discern no particular legislative directive in the statute with respect to the treatment of S corporation distributions. The quoted language simply provides a general definition of a dividend as a form of gross income, as opposed to a capital return on investment, which would not be a taxable event if the distribution to the shareholder occurred in the absence of either current or accumulated earnings. The simple message to be taken from the definition is that in determining whether a distribution is a dividend, and thus taxable as income, one must look to see if the distribution is from either accumulated or current earnings, or both. *Laurite* suggests, and we agree, that the FIFO methodology does not find its source in the statute. *Ibid.*

In the absence of a specific legislative provision, the Director is permitted to adopt regulations "to enforce the provisions of th[e] act." *N.J.S.A.* 54A:9–17. Such interpretive regulations must be adopted in accordance with the Administrative Procedure Act. *Metromedia, Inc. v. Director, Div. of Taxation,* 97 *N.J.* 313, 327–37, 478 *A.*2d 742 (1984). When so adopted, regulations are accorded a presumption of reasonableness. *Ambrose v. Director, supra,* 198 *N.J.Super.* at 552, 487 *A.*2d 1274. The Director's citation to *Metromedia, supra,* as support for the exercise of the "discretion granted" pursuant to *N.J.S.A.* 54a:9–17(a), however, is misplaced. It is clear that there is no such regulation concerning the methodology employed by the Director. Indeed, the Director concedes that he is proceeding in accord with a "policy" announced in the *State Tax News* in 1991. Nevertheless, "the *State Tax News* is not an authoritative pronouncement, nor does it have the binding effect of a statute or regulation." *Ambrose v. Director, supra,* 198 *N.J.Super.* at 553, 487 *A.*2d 1274. Where, as here, the subject matter of the pronouncement "reaches concerns that transcend those of the individual litigants and implicate matters of general administrative policy, rule-making procedures should be invoked." *Metromedia, supra,* 97 *N.J.* at 331, 478 *A.*2d 742. We find ourselves, therefore, in a netherworld, dealing only with the Director's personal interpretation of the resident credit statute, in respect of out-of-state S corporation distributions to New Jersey shareholders, that has not undergone the rigors of the rule-making process. We shall give the Director's interpretation deference in view of his expertise, but our standard of review is considerably broader than it would otherwise have been had there been a regulation on the subject. *See In re CAFRA Permit No. 87–0959–5,* 290 *N.J.Super.* 498, 676 *A.*2d 161 (App.Div.1996), *rev'd on other grounds,* 152 *N.J.* 287, 704 *A.*2d 1261 (1997).

The taxpayer argues that the source of his distributions from WBI for GIT purposes is a tax accounting question. He further contends that in regard to matters of tax accounting, the GIT Act expresses a preference for the use of federal tax accounting

principles. Thus, in this case, as opposed to *Laurite, supra,* the taxpayer seeks employment of federal tax accounting principles not because they are "preferable," *Laurite, supra,* 12 *N.J. Tax* at 493, but because the GIT Act and case law mandates their use. The taxpayer further contends that federal tax accounting principles applicable to C corporations (New Jersey treats all distributions to shareholders as if they are from C corporations) employ the LIFO method for tracing the source of dividend distributions. The Director does not disagree with the latter contention. He does, however, disagree with the taxpayer's argument that federal tax accounting principles must be applied in these circumstances.

The taxpayer relies primarily on *N.J.S.A.* 54A:8–3(c), which provides:

> A taxpayer's accounting method under this act shall be the same as his accounting method for Federal income tax purposes.

Other statutory references to federal accounting principles can be found in *N.J.S.A.* 54:5–1b (regarding business income) and *N.J.S.A.* 54A:5–1c (regarding a taxpayer's net gains from the disposition of property).

In reply, the Director points out that *N.J.S.A.* 54A:8–3(c) refers to the "taxpayer," who in this case is Sutkowski, whereas the federal tax rule upon which the taxpayer relies for establishment of the LIFO method applies to a corporation making a distribution. A corporation is not included in the definition of a "taxpayer" in the GIT Act. *N.J.S.A.* 54A:1–2. Accordingly, the Director correctly points out that the statute does not compel the Director to adopt federal tax principles applicable to tracing corporate dividends to an individual taxpayer under the GIT Act. Further, the Director points out that there is no compelling principle to be implied from the GIT Act requiring the use of federal tax principles in the absence of a specific statutory provision or regulation addressing the issue. The Director is correct. In *Smith v. Director, Div. of Taxation,* 108 *N.J.* 19, 527 *A.*2d 843 (1987), the Director found himself on the other side of the issue. In that case, the Director attempted to defend a regulation regarding partnership income by drawing analogies between the regulation

and the IRC. The Court rejected the Director's argument and agreed with the Tax Court that the regulation must be disregarded because it was inconsistent with the GIT Act. *Id.* at 24, 527 A.2d 843. The Court said:

> We disagree that the Legislature patterned the New Jersey Gross Income Tax Act on the Internal Revenue Code. Even a cursory comparison of the New Jersey Gross Income Tax and the Internal Revenue Code indicate that they are fundamentally disparate statutes.
>
> * * * *
>
> Moreover, when the Legislature intended to incorporate federal income tax concepts, it did so explicitly.
>
> * * * *
>
> ▇ The Act's legislative history clearly indicates that the Legislature intended to and did reject the federal income tax model in favor of a gross income tax act in order to avoid tax loopholes available under the federal tax laws.
>
> [*Id.* at 32–33, 527 A.2d 843.]

Thus, we must reject the taxpayer's assertion in his reply brief that the Legislature has weaved through the GIT Act "a consistent theme that federal tax accounting principles always apply." In the end, the determination of whether the LIFO method as proposed by the taxpayer should be employed in these circumstances, or whether the Director's employment of the FIFO method is correct, depends on which method best achieves the goal of the Legislature with respect to the provision of the GIT Act under scrutiny. Even ease of administration is not an acceptable justification for a regulation where the "regulation conflicts with the governing statute." *Id.* at 33, 527 A.2d 843.

▇ Thus, we must return to our understanding of the legislative policy that undergirds the resident tax credit and restate what we said before. The Legislature wanted to avoid double taxation on a resident taxpayer for income that was subject to tax in another state and in New Jersey during the same taxable year. It is obvious to us that where a New Jersey taxpayer has paid a tax on S corporation income in another state and where the S corporation income was sufficient to cover the distribution to the New Jersey shareholder that was subject to that tax, the same income

has been subject to tax in two states. In those circumstances, the Legislature intended to give the New Jersey resident a tax credit. There is nothing in the statute or the legislative scheme as a whole suggesting that the Legislature intended to give less than a full credit. The Director's choice of the FIFO method of tracking such distributions has no purpose other than to diminish the credit when there is no legislative intent to do so. While the Director's approach undoubtedly brings more money into the tax coffers and enhances the public fisc, that laudable goal cannot be approved in the face of a legislative design to the contrary. *Smith v. Director, supra,* 108 *N.J.* at 33, 527 *A.*2d 843.

The judgment of the Tax Court is reversed. The final determination of the Director is reversed, and the matter is remanded for the purpose of recalculating the taxpayer's resident taxpayer credit.