DeALMEIDA, J.T.C.
This case concerns the calculation of use tax on a sailboat plaintiffs purchased in Maryland and put to use in New Jersey. Shortly after plaintiffs purchased their new sailboat they sold their old sailboat to another couple. Both transactions took place through the same broker, who never took possession of plaintiffs’ old sailboat, but who applied the proceeds from the sale of that vessel to the purchase price of the new sailboat. Plaintiffs, who do not contest application of the tax, contend that when calculating the tax due the Director, Division of Taxation must recognize a trade-in credit pursuant to N.J.S.A. 54:82B-6 for the amount realized from the sale of plaintiffs’ old sailboat. The Director takes the position that a trade-in credit is not available when the sale and purchase of similar property is handled through a broker who does not take possession for the purpose of resale of the property for which a trade-in credit is sought. For the reasons described more fully below, the court concludes that the Director’s *513 position is in accord with the plain language of N.J.S.A. 54:82B~6 and must be upheld. The court, therefore, grants the Director’s motion for summary judgment.
I. Findings of Fact
A. Undisputed Facts.
The court finds the following undisputed facts: Plaintiffs Marguerite T. Simon and Donald Howard are a married couple who reside in New Jersey. On March 24, 2006, plaintiffs signed a purchase agreement to buy from Annapolis Yacht Sales of Annapolis, Maryland, a 2006 Wauquiez PC 41 sailboat. The total price of the new sailboat, including accessories, delivery charges, commissioning, a shipping cradle, and after an $8,000 discount, was $887,221. The purchase agreement provided the following financing terms: “10% with order,” “85% on approved financing or arrival” and “5% on delivery.” The purchase agreement made no mention of a trade-in credit for plaintiffs’ old sailboat; the sales price of the new sailboat was not reduced to reflect any such credit; and plaintiffs’ agreement to purchase the new sailboat was in no way conditioned on the sale of their old sailboat or the acceptance of that vessel by Annapolis Yacht Sales for purposes of resale.
On April 1, 2006, plaintiffs signed a “Yacht Purchase and Sale Agreement” in which they agreed to sell to Jason and Polly Thomas plaintiffs’ 2004 Beneteau 361 sailboat for $116,200. The Thomases previously signed the agreement on March 27, 2006. This agreement plainly identified plaintiffs as the sellers of the old sailboat. Annapolis Yacht Sales is identified as the “Selling Broker” entitled to a commission for the transaction and is under no obligation to take possession of the old sailboat or provide the old sailboat to the Thomases. The Thomases were required to deposit $12,000 with Annapolis Yacht Sales to be held in escrow for plaintiffs until completion of the sale and were given until April 12, 2006 to survey the old sailboat and its inventory and to accept or reject the vessel. The agreement required plaintiffs, as the sellers, to deliver the old sailboat to the Thomases. A failure by plaintiffs to fulfill this obligation would render them liable to *514 Annapolis Yacht Sales for “the full brokerage commission which would have otherwise been due” had the sale been completed but would leave plaintiffs as the owners of the old sailboat. The purchase agreement set a closing date of May 7, 2006.
On April 11, 2006, prior to the date on which the Thomases were required to accept or reject the old sailboat and nearly a month before the anticipated closing date of that transaction, plaintiffs purchased the new sailboat. An April 12, 2006 bill of sale from Annapolis Yacht Sales provides as follows:
2006 Wauquiez 41 PS Hull # WAU41005A606 and her equipment
Selling Price $387,221.00
5% MD Tax out of state
Processing & Registration Fee _95.00
Sub Total $387,316.00
Less Deposit (100,000.00)
Less Amount Financed (200,000.00)
Balance Due at Delivery $ 87,316.00 (paid in certified funds or wire transfer prior to settlement payable to Annapolis Yacht Sales)
The bill of sale is signed by a representative of Annapolis Yacht Sales. Plaintiffs’ signatures appear on the bill of sale below a statement indicating that Annapolis Yacht Sales is not responsible for collecting Maryland sales tax on the new sailboat because plaintiffs intend to remove that boat from Maryland waters within sixty days. The April 12, 2006 bill of sale makes no mention of plaintiffs’ old sailboat, provides no credit for that boat, and contains no indication that Annapolis Yacht Sales accepted plaintiffs’ old sailboat as partial payment for the new sailboat. Because of the installation of electronic equipment, a generator, upholstery and other options, the new sailboat was delivered to plaintiffs on June 10, 2006.
The record contains a “Certification of State of Principal Use” filed with the Maryland Department of Natural Resources dated *515 April 11, 2006. The certification, signed by plaintiffs under penalty of perjury, describes the new sailboat and indicates that New Jersey will be the principal place of use of that vessel. The document lists the “Total Purchase Price” of the new sailboat as “$387,221.00” and the “Trade-in Value” as “$0.” The certification is also signed under penalty of perjury by a representative of Annapolis Yacht Sales.
On May 6, 2006, Jason and Polly Thomas purchased the old sailboat from plaintiffs. A bill of sale issued by Annapolis Yacht Sales provides as follows:
2004 Beneteau 361 “Sails of Justice” Hull # BEY76331I304 and her equipment
Selling Price $116,200.00
5% MD Tax 0.00
Processing Fee 95.00
Abstract Fee 0.00
Sub Total $116,295.00
Less Deposit Received (12,000.00)
Less Amount Financed (94,400.00)
Balance Due $ 9,895.00 (paid in certified funds or wire transfer prior to closing payable to Annapolis Yacht Sales)
On June 6, 2006, the New Jersey Motor Vehicle Commission issued a Certificate of Title to plaintiffs for the new sailboat.
B. The Simon Certification.
According to a certification of plaintiff Simon, at the time that plaintiffs signed the purchase agreement to buy the new sailboat she and plaintiff Howard were aware that Annapolis Yacht Sales had identified purchasers for the old sailboat and was in the process of having those purchasers sign a purchase agreement for that transaction. According to Simon, it was plaintiffs’ “intention that the proceeds from the sale of the OLD sailboat would be used as part of the purchase price for the NEW sailboat” and that *516 representatives of Annapolis Yacht Sales were aware of this intention. Simon certified that because plaintiffs’ deposit and financing totaled $300,000, which is less than the purchase price of the new sailboat, it was clear that the proceeds from the sale of the old sailboat would be used to pay for the new vessel. According to Simon, the proceeds from the sale of the old sailboat “did not pass through our ‘hands’ prior to being applied to the purchase of the NEW sailboat.” The Director did not contest these portions of Simon’s certification and the court finds as fact the statements detailed above.
In her certification Simon also described her experience in the sailing community, including her view that it is the common practice in that community to use a broker on a commission basis for the sale and purchase of high-priced sailboats. According to Simon, “[purchasing a sailboat of this size is not akin to the purchase of an automobile. It is more closely analogized to the purchase of real estate, which generally includes a period of time between the execution of the purchase agreement and the ultimate transfer of title at a formal closing.” The Director contests this testimony, arguing that Simon does not qualify as an expert in the sailboat sales industry and that the industry’s custom is irrelevant to the availability of a trade-in credit pursuant to N.J.S.A. 54:32B-6. As explained in greater detail below, the court concludes that industry custom is not relevant to the determination of whether plaintiffs are entitled to a trade-in credit. The availability of a credit for a trade-in is established by statute, the plain language of which does not include industry custom as a relevant factor for determining whether the credit applies. The court concludes that Simon’s testimony regarding her experience in the sailing community is irrelevant to the issue before the court. Furthermore, plaintiff Simon was neither offered nor qualified as an expert witness. The court finds, therefore, that the contested portion of the Simon certification does not raise a disputed issue of material fact precluding resolution of this matter by summary judgment.
C. The Howard Certification.
Plaintiff Howard submitted a certification in which he states, “[w]hen I realized that the manner in which the documentation *517 prepared by the dealer, Annapolis Yacht Sales, would affect the amount of sales tax paid in New Jersey, I requested that the dealership correct the documentation.” Attached to the Howard certification are what ho describes as a corrected bill of sale, a corrected Certification of State of Principal Use, an e-mail correspondence and a letter related to plaintiffs’ purchase of the new sailboat. According to plaintiffs, these documents establish that they received a trade-in credit for their old sailboat when they purchased the new vessel. The Director protests the admission of the documents attached to the Howard certification. The court concludes that the documents are inadmissible as evidence.
The purported corrected bill of sale is not dated and, unlike the April 12, 2006 bill of sale, does not contain a signature of a representative of Annapolis Yacht Sales. Howard provides no evidence regarding who prepared the corrected bill of sale, when it was prepared, or what information was provided to the person who drafted the corrected bill of sale. Nor does the record contain any evidence suggesting that the corrected bill of sale was created and maintained in the ordinary course of business at Annapolis Yacht Sales or any of the other predicates necessary to overcome its obvious nature as inadmissible hearsay. See N.J.R.E. 803(c)(6).
Moreover, even if admissible, the corrected bill of sale does not establish that plaintiffs received a trade-in credit for their old sailboat. The corrected bill of sale provides as follows:
2006 Wauquiez 41 PS Hull # WAU41005A606 and her equipment
Selling Price $387,221.00
Processing & Registration Fee 95.00
Sub Total $387,316.00
Less Deposit (100,000.00)
Less Proceeds from sale of 2004 Beneteau 361 (111,100.00)
Less Amount Financed (200,000.00)
Balance Due at Settlement $00
*518 Refund Due Buyer ($23,784.00)
(paid in certified funds or wire transfer prior to settlement payable to Annapolis Yacht Sales)
The selling price of plaintiffs’ new sailboat is not reduced by a credit for the broker’s acceptance of plaintiffs’ old sailboat in partial payment. The corrected bill of sale merely indicates that $111,110 of the money that plaintiffs owe to Annapolis Yacht Sales for the new sailboat would be derived from plaintiffs’ sale of their old vessel to the Thomases. The corrected bill of sale, if accurate, merely demonstrates that plaintiffs identified a source of the proceeds for part of their payment for the new sailboat.
The purported corrected Certification of State of Principal Use is similarly deficient. The corrected certification indicates that plaintiffs received a trade-in credit of $118,000 for their old boat. The trade-in credit reported on the corrected certification is different from the trade-in credit reported on the purported corrected bill of sale offered by plaintiffs. In addition, according to Simon’s certification, the corrected certification was prepared at an unspecified time after the initial transaction when Simon realized the use tax implications of the purchase of the new sailboat. Yet, the purported corrected certification is dated April 11, 2006, the very day that plaintiffs purchased the new sailboat, and the same day that the original certification was filed. Plaintiffs proffered no explanation for why a corrected certification prepared after plaintiffs’ purchase of the new sailboat would contain the same date as the original certification.
Moreover, the corrected certification, although dated the same day as the original certification, contains a different work telephone number for plaintiff Howard than is listed on the original certification, and a different street address for the location of the marina where the new sailboat would be kept, raising concerns about the document’s reliability. Finally, the record contains no evidence of who prepared the corrected certification, when it was prepared, or what information was given to the person who *519 prepared the document. Nor does the record contain any evidence suggesting that the corrected certification was created and maintained in the ordinary course of business at Annapolis Yacht Sales or any of the other predicates necessary to overcome its obvious nature as inadmissible hearsay. See N.J.R.E. 803(c)(6).
The e-mail message and letter appear to be communications between a representative of Annapolis Yacht Sales and a representative of the State of Maryland. The e-mail message from what looks to be a Maryland governmental e-mail address, is dated August 30, 2006, and requests a statement from Annapolis Yacht Sales regarding the Certification of State of Principal Use filed with respect to plaintiffs’ new sailboat. The e-mail notes that the certification does not reflect a trade-in credit. Plaintiffs’ submission of this e-mail is curious given that plaintiffs also proffered what they describe as a corrected Certification of State of Principal Use showing a trade-in credit dated April 11, 2006, more than four months prior to the e-mail. The record contains no evidence explaining who prepared the e-mail message, why it was prepared, and what information the author had at the time that the message was drafted.
The letter attached to the Howard certification is on Annapolis Yacht Sales letterhead. It is undated, unsigned and purportedly from Jane M. Tayman, whose relationship to Annapolis Yacht Sales is unexplained. The record contains no evidence detailing when the letter, which purports to show that plaintiffs received trade-in credit for the old sailboat, was prepared, whether Ms. Tayman had authority to write the letter or why it was not signed by her or dated. Nor does the record contain any proof that either the e-mail communication or the letter was created and maintained in the ordinary course of business at Annapolis Yacht Sales or any of the other predicates necessary to overcome their obvious nature as inadmissible hearsay. See N.J.R.E. 803(c)(6). The court concludes that these documents are not admissible evidence.
The court finds, therefore, that the Howard certification raises no disputed issues of material fact precluding resolution of this matter by summary judgment.
*520 II. Proceedings Beloiu
On August 1, 2006, the Director received a payment from plaintiffs of $16,567 in use tax related to the new sailboat. Plaintiffs calculated their use tax liability as follows:
Purchase Price of New Sailboat $387,221
Trade-in Value of Old Sailboat $111,100
Purchase Price $276,121
6% Use Tax x. 06
Use Tax Due $ 16,567
On August 11, 2006, the Director issued a notice of assessment rejecting plaintiffs’ calculation of the use tax due on the new sailboat. The assessment is summarized as follows:
Purchase Price of New Sailboat $387,221
Trade-in Value of Old Sailboat $_00
Purchase Price $387,221
6% Use Tax x .06
Use Tax Due $ 23,233
Penalty and Interest $ 599
Use Tax Paid $ 16,567
Balance Due $ 7,265
Plaintiffs thereafter filed an administrative appeal with the Division. On October 12, 2007, the Director issued a final determination affirming her notice of assessment. With interest updated to December 20, 2007, plaintiffs’ outstanding use tax liability at the time of the final determination was $8,111.75.
The timely filing of a Complaint initiating this matter followed. After discovery, the Director moved for summary judgment in her favor.
III. Conclusions of Law
“Summary judgment should be granted where ‘the pleadings, depositions, answers to interrogatories and admissions on *521 file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the nonmoving party is entitled to a judgment or order as a matter of law.’” Alpha I, Inc. v. Director, Div. of Taxation, 19 N.J.Tax 53, 56 (Tax 2000)(citing R. 4:46-2). In Brill v. Guardian Life Ins. Co., 142 N.J. 520, 523, 666 A.2d 146 (1995), our Supreme Court established the standard for summary judgment as follows:
IWJhcn deciding a motion for summary judgment under Rule 4:40-2, the determination whether there exists a genuine issue with respect to a material fact challenged requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.
The court concludes that this matter is ripe for decision by summary judgment.
The court’s analysis is influenced by the familiar principle that the Director’s interpretation of tax statutes is entitled to a presumption of validity. “Courts have recognized the Director’s expertise in the highly specialized and technical area of taxation.” Aetna Burglar & Fire Alarm Co. v. Director, Div. of Taxation, 16 N.J.Tax 584, 589 (Tax 1997)(citing Metromedia, Inc. v. Director, Div. of Taxation, 97 N.J. 313, 327, 478 A.2d 742 (1984)). The scope of judicial review of the Director’s decision with respect to the imposition of a tax “is limited.” Quest Diagnostics, Inc. v. Director, Div. of Taxation, 387 N.J.Super. 104, 109, 903 A.2d 442 (App.Div.), certif. denied, 188 N.J. 577, 911 A.2d 69 (2006). The Supreme Court has directed the courts to accord “great respect” to the Director’s application of tax statutes, “so long as it is not plainly unreasonable.” Metromedia, supra, 97 N.J. at 327, 478 A.2d 742. See also GE Solid State, Inc. v. Director, Div. of Taxation, 132 N.J. 298, 306, 625 A.2d 468 (1993)(“Generally, courts accord substantial deference to the interpretation an agency gives to a statute that the agency is charged with enforcing.”) (citations omitted.)
Use tax is imposed pursuant to N.J.S.A. 54:32B-6. As the time of the transactions at issue here, the statute provided
*522 [u]nless property or sendees have already been or will be subject to the sales tax under this act, there is hereby imposed on and there shall be paid by every person a use tax for the use within this State of 6%, except as otherwise exempted under this act, (A) of any tangible personal property purchased at retail----
[N.J.S.A. 54:32B-6.] [1]
“ ‘The use tax is a tax complimentary to the sales tax as an aid to its enforcement. It is a tax on possession and enjoyment of that which was purchased and for which no sales tax was paid.’” Boardwalk Regency Corp. v. Director, Div. of Taxation, 18 N.J.Tax 328, 334 (App.Div.1999) (quoting McGraw-Hill v. Div. of Taxation, 9 N.J.Tax 372, 382 (Tax 1987)). The tax “permits New Jersey to recover revenue to which the State is entitled that might otherwise be lost when residents purchase property free from sales tax outside New Jersey and later use it in-state to the same extent as taxable property purchased” here. Heuer v. Director, Div. of Taxation, 12 N.J.Tax 443, 447 (Tax 1992), aff'd, 14 N.J.Tax 283 (App.Div.1993). As noted above, the parties do not dispute that plaintiffs’ new sailboat is subject to the use tax.
At issue here is the provision concerning the calculation of the tax. At the times relevant to this matter the law provided
[flor purposes of clause (A) of this section, the tax shall be at the applicable rate, as set forth hereinabove, of the consideration given or contracted to be gjven for such property or for the use of such property, but excluding any credit for property of the same land accepted in part payment and intended for resale----
[N.J.S.A. 54:32B-6.]
The parties are in agreement and the court concludes that plaintiffs’ new sailboat and plaintiffs’ old sailboat are “property of the same kind” within the meaning of N.J.S.A 54:32B-6. The availability of a trade-in credit depends, therefore, on: (1) whether plaintiffs received a “credit” against the purchase price of the new sailboat; (2) whether that credit was for “property ... accepted in part payment” for the new sailboat; and (3) whether the old sailboat was “intended for resale” by the party accepting that vessel. The court concludes that none of the statutory predicates for a trade-in credit were satisfied here.
*523 Statutory construction begins with the statute’s plain language. Merin v. Maglaki, 126 N.J. 430, 434, 599 A.2d 1256 (1992). “A statute should be interpreted in accordance with its plain meaning if it is clear and unambiguous on its face and admits of only one interpretation.” Board of Educ. v. Neptune Twp. Educ. Ass’n, 144 N.J. 16, 25, 675 A.2d 611 (1996)(quotations and citation omitted). “[T]he best approach to the meaning of a tax statute is to give to the words used by the Legislature their generally accepted meaning, unless another or different meaning is expressly indicated.” Public Serv. Elec. & Gas Co. v. Township of Woodbridge, 73 N.J. 474, 478, 375 A.2d 1165 (1977)(quotations and citation omitted). “The duty of the Director, and this court, is to give meaning to the wording of the statute and, where the words used are unambiguous, apply its plain meaning in the absence of a legislative intent to the contrary.” Sutkowski v. Director, Div. of Taxation, 312 N.J.Super. 465, 475, 712 A.2d 229 (App.Div.1998) (citation omitted).
“Credit” is generally defined as a “deduction from an amount otherwise due.” Webster’s Ninth New Collegiate Dictionary (9th ed. 1987). The court concludes that plaintiffs did not receive a credit against the purchase price of the new sailboat for the old sailboat. The April 12, 2006 bill of sale, signed by plaintiffs and a representative of the broker, indicates that the broker did not reduce the price of the new sailboat to reflect a credit for the old sailboat. The full purchase price, $387,221, as reported on the itemized purchase agreement signed approximately one month earlier, was listed on the bill of sale as the “selling price” for the new sailboat. The old sailboat is nowhere mentioned on the bill of sale and its value is in no way reflected as having an effect on the purchase price of the new vessel. Similarly, the Certification of State of Principal Use, signed by plaintiffs and a representative of the broker under penalty of perjury, and filed with Maryland tax officials, expressly states that the purchase price of the new sailboat was “$387,221.00” and that the trade-in value for the transaction was “$0.”
This conclusion does not change if the court accepts as true plaintiffs’ contention that Annapolis Yacht Sales applied the pro *524 eeerls from the sale of plaintiffs’ old sailboat to satisfy plaintiffs’ outstanding balance for the previously purchased new vessel. Identifying the source from which partial payment on the purchase of new property will be derived is not equivalent to receiving a credit on the purchase price of that property. While plaintiffs and Annapolis Yacht Sales may have had an understanding that $111,100 of the proceeds from the sale of the old sailboat would be applied to plaintiffs’ outstanding balance on the new sailboat, this payment arrangement did not reduce the purchase price of the new sailboat. Indeed, the purchase of the new sailboat at a purchase price of $387,221 was completed weeks before plaintiffs sold the old sailboat to the Thomases. The second transaction was independent of the first and neither transaction was conditioned on the successful completion of the other.
Nor was the old sailboat “property ... accepted in part payment” for the new sailboat. The record establishes that Annapolis Yacht Sales never accepted possession or ownership of the old sailboat. The purchase agreement between plaintiffs and the Thomases provides that the old sailboat was to be transferred directly from plaintiffs to the Thomases and that Annapolis Yacht Sales acted only as the broker in that transaction. The record contains no evidence that plaintiffs were obligated to turn possession of the old sailboat over to Annapolis Yacht Sales as partial payment for the new sailboat. In fact, the purchase agreement between plaintiffs and the Thomases for the old sailboat expressly provided that plaintiffs’ failure to give the old sailboat to the Thomases would not extinguish the broker’s right to a commission on the sale. Yet, the contract does not provide that Annapolis would take possession of the old sailboat in those circumstances. If the second transaction failed, plaintiffs would remain in possession of the old sailboat and, presumably, have an outstanding balance of $111,100 on their new vessel.
Finally, plaintiffs’ old sailboat was not “intended for resale” by Annapolis Yacht Sales. As detailed above, Annapolis did not sell the old sailboat to the Thomases. Plaintiffs did. The record contains no evidence suggesting that Annapolis Yacht Sales ever *525 intended to take possession of the old sailboat and offer it for sale to a third party.
Having failed to satisfy any of the elements of N.J.S.A. 54-.32B-6, plaintiffs are not entitled to a trade-in credit for their old sailboat. The Director’s final determination, which comports with the plain language of the controlling statute, must be upheld.
Two points raised by the parties warrant note. First, the Director urges the court to apply N.J.A.C. 18:24-7.4 to determine if plaintiffs are entitled to a trade-in credit. That regulation applies to “any person engaged in the business of selling motor vehicles at retail” and allows for a “deduction from the purchase price, equal in amount to the amount of a trade-in actually allowed on the purchase....” N.J.A.C. 18:24-7.4(a) and (c). The regulation provides that a trade-in credit -will be permitted only where “the purchase and trade-in occur at the same time” and states that a credit will not be permitted for a “separate or independent sale of a motor vehicle ... even if the proceeds of the sale are immediately applied by the seller to a purchase of a motor vehicle from the buyer.” N.J.A.C. 18:24-7.4(c)(l). The rule requires the participation of a motor vehicle dealer registered with the Division and the Motor Vehicle Commission, N.J.A.C. 18:24-7.4(c)(3), and that the dealer “obtain[ ] the certificate of title of the trade-in vehicle” to be retained “as part of the record of the sale of transaction,” N.J.A.C. 18:24-7.4(c)(4).
The court concludes that N.J.A.C. 18:24-7.4 does not apply to the purchase of a sailboat. By its express terms, the regulation applies to “motor vehicles.” The Legislature defined “motor vehicles” for purposes of the sales and use tax as follows: “all vehicles propelled otherwise than by muscular power (excepting such vehicles as run only upon rails or tracks), trailers, semitrailers, house trailers, or any other type of vehicle drawn by a motor-driven vehicle, and motorcycles, designed for operation on the public highways.” N.J.S.A. 54:32B-2(v). A sailboat does not fall within this definition. While a sailboat is powered by something-other than muscular power it is certainly not designed for operation on the public highways. In addition, the regulation requires *526 the participation of a motor vehicle dealer registered with the Motor Vehicle Commission, which strongly suggests that the Director did not intend for the regulation to apply to the purchase of sailboats, particularly where such transactions will take place outside of the State. The mere fact that some boats must be registered with the Motor Vehicle Commission, see N.J.S.A. 12:7A-1 to -29, does not equate to a legislative determination that those boats are motor vehicles under the Sales and Use Tax Act.
Second, plaintiffs contend, but have not established, that the use of a broker for the purchase and sale of sailboats is an industry-wide practice. They argue that requiring a broker to take possession of a sailboat in order for a trade-in credit to apply would preclude availability of the credit for the entire industry. Plaintiffs urge the court to interpret N.J.S.A. 54:32B-6 in light of this practice and extend the trade-in eredit to brokered sailboat sales. The court, however, is bound by the plain language of the statute. The Legislature defined in unambiguous terms the circumstances in which a trade-in credit is applicable. The court lacks authority to depart from that language in order to apply the credit to transactions outside the statutorily defined parameters. Moreover, it may well have been the Legislature’s intent to exclude brokered transactions from the trade-in credit. Indeed, plaintiffs point to no statutory provision, legislative history or legal precedent suggesting otherwise.
The court will enter Judgment affirming the Director’s final determination.

 The sales tax rate was raised to 7% effective October 1, 2006. L. 2006, c. 44, § 5.