NARAYANAN, J.T.C.
This is the court’s opinion in connection with the parties’ respective motions for summary judgment in the above captioned Gross Income Tax (“GIT”) matter. The issue presented is whether plaintiffs are eligible for a GIT credit for income taxes paid to New York on passed-through S corporation income. Defendant (“Director”) denied a credit because the S corporation allocated 100% of its income to New Jersey, and pursuant to the GIT statute, N.J.S.A. 54A:4-1(e), no credit is allowed for S corporation income allocated to this State. Plaintiffs argue that the S corporation was forced to make such allocation by the Corporation Business Tax (“CBT”) Act, however, it is undisputed that much of the S corporation income was earned and sourced in New York. Since they paid New York personal income tax upon the passed-through S corporation income sourced in New York, plaintiffs maintain that they should receive a credit for the same against their GIT liability.
The court finds that the plaintiffs are entitled to a GIT credit. The statutory denial of the GIT credit for “S corporation income allocated to New Jersey” does not supersede the scope and intent of the GIT credit provision of preventing multiple income taxation on the same income. Therefore, a credit must be allowed for S corporation income not allocated to New Jersey. The interpretive regulations of the Director as in existence for tax year 2006 properly accomplish this intent. To the extent the Director applied these regulations in a rigid and technical manner for S corporation income required to be allocated 100% to New Jersey under the CBT Act, such application is incorrect. Therefore, the court grants plaintiffs’ cross-motion for summary judgment.

UNDISPUTED FACTS

Durdica Beljakovic and her husband Svetozar Beljakovic (“plaintiffs”) are residents of New Jersey. Durdica Beljakovic is the president and sole shareholder of A-Tech Restoration, Inc., (“A-Tech”), a New Jersey S Corporation. A-Tech did business in New York State (“NYS”), New York City (“NYC”), and New *460 Jersey in 2006, the tax year at issue herein. It did not maintain a regular place of business outside New Jersey.

Corporate Income Tax Returns

A-Tech filed a New York Corporation Tax return for S corporations (Form CT-3-S), and paid $425 as the minimum franchise tax. On Schedule A of the attachment to the return, it reported 68.62% as the “[NYS] business receipts factor” (N.Y.S sourced business receipts divided by A-Tech’s entire business receipts), and 205.87% as the “[NYS] weighted business receipts factor.” It also reported its “weighted payroll factor” as 49.68% (N.Y.S sourced wages divided by “everywhere” wages). It then reported its “business allocation percentage” as 51.112%. It also reported this 51.1% of the allocated income as being passed through to Durdica Beljakovic.
A-Tech also filed a NYC General Corporation Tax return (Form NYC-3L). This is because, unlike NYS, NYC does not recognize S corporations. Therefore, A-Teeh was required to report and file tax returns as a regular or “C” corporation. On this return, it reported 29.09% as the “business allocation percentage.” On Schedule H of the return, it reported 0% of real property allocable to NYC; 49.87% as the percentage of business receipts allocated to NYC (N.Y.C sourced sales receipts divided by A-Tech’s entire business receipts); and 37.39% as the payroll factor (wages attributable to NYC divided by “everywhere” wages). It then reported its “business allocation percentage” as the total of the factors (property, sales and payroll) divided by three or 29.09%. A-Tech paid corporate income tax of $26,499.
A-Tech filed a New Jersey CBT return allocating 100% of its income to New Jersey. It did not fill out Schedule J, which required all taxpayers maintaining a regular place of business outside New Jersey to allocate income, because it did not have a regular place of business outside New Jersey. The CBT return stated that taxpayers such as A-Tech could not fill out Schedule J because “tax law require[d] the allocation factor to be 100%.” A-Tech reported the taxes paid to NYS and NYC on Schedule H of *461 the CBT return.[1] It initially deducted these taxes in computing its entire net income, but as required by N.J.S.A. 54:10A-4, it added back these taxes. A-Tech did not seek any credit for taxes paid to other jurisdictions. A-Tech also reported 100% of its net income on Schedule NJ-K-1 as being plaintiff Durdica Beljako-vic’s share of passed-through S corporation income.

Personal Income Tax Returns

Plaintiffs filed a 2006 NYS Non-Resident Income Tax return (Form IT-203) reporting the pro-rata share of A-Tech’s income as allocated to NYS (51.1%) passed through to Durdica Beljakovie, or $510,328. After certain adjustments, the resultant tax was $34,390. The portion of the return which required computation of “[NYC] and Yonkers taxes” was left blank.
In New Jersey, plaintiffs filed a joint GIT return. Among others, they reported Durdica Beljakovic’s pro-rata share of A-Teeh’s income passed through to her as the 100% shareholder, as reported by A-Tech on corporate schedule NJ-K-1 ($1,032,793). They then sought credit for the amount of taxes paid to NYS as was computed on Form IT-203 ($34,390). On Schedule A of the GIT return, they showed NYS as the only taxing jurisdiction, and reported the same amount of income as was reported on the IT-203.

The Director’s Audit

The Director audited plaintiffs’ 2006 GIT return. He issued a Notice of Deficiency disallowing the entire amount which plaintiffs had claimed as credit for taxes paid to NYS, and imposed additional GIT, interest and penalties. The reason for his disallowance was simply that his adjustment was pursuant to N.J.S.A. 54A:4-1 “[rjegarding the numerator of the credit calculation.” There was no other explanation or particulars in this regard.
Plaintiffs did not protest the Notice of Deficiency within the statutory time period, and therefore the deficiency became an *462 assessment pursuant to N.J.S.A. 54A:9-2(b). They then filed a timely appeal to this court.

ANALYSIS

I. Standard for Summary Judgment

Summary judgment will be granted “if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.” R. 4:46-2(e); Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523, 666 A.2d 146 (1995). Denial is appropriate only where the evidence is such that reasonable minds could return a finding favorable to the party opposing the motion. Id. at 534, 540, 666 A.2d 146.
The issue here is whether plaintiffs are entitled to a credit under the GIT Act for personal income taxes paid to New York on passed-through S corporation income because 100% of such income was required to be allocated to New Jersey. The Director maintains that the plain language of the controlling statute, N.J.S.A. 54A:4-1(c) (“Subsection C”), bars such credit. He also maintains that such credit is further barred because plaintiffs do not meet the requirements of N.J.A.C. 18:35-4.1(a)(3)(ii), his regulation interpreting Subsection C.
Plaintiffs argue that A-Tech’s 100% allocation was for CBT purposes only, and the legally-imposed 100% allocation under the CBT laws cannot and should not trump the underlying legislative intent and purpose of N.J.S.A 54A:4-1, namely, providing a GIT credit to avoid dual personal income tax on the same income. Plaintiffs argue that this is especially so because there is no question that A-Tech’s income was earned and allocated to New York. They maintain that the Director’s interpretation of Subsection C violates not only N.J.SA 54A:4-1 but also the Commerce Clause of the United States Constitution.
The matter requires an interpretation and application of the relevant GIT statute, N.J.S.A. 54A:4-1 and the Director’s regulations interpreting the same. There are no material facts in dispute. Therefore, the matter is ripe for summary judgment.

*463
II. Principles of Statutory Construction

As with any statute, the primary goal of the court is to effectuate the legislative intent. Cosmair, Inc. v. Director, Div. of Taxation, 109 N.J. 562, 570, 538 A.2d 788 (1988). The court must first consider the plain language of the statute, which is to be given its ordinary meaning, provided that meaning is consistent with the legislative intent. Koch v. Director, Div. of Taxation, 157 N.J. 1, 7, 722 A.2d 918 (1999). If a statute can be interpreted in more than one way, it should be interpreted in light of the Legislature’s general intention “in an integrated way without undue emphasis on any particular word or phrase, and if possible, in a manner which harmonizes all of its parts so as to do justice to its overall meaning.” Ibid, (internal quotations omitted). Further, a statutory enactment cannot be deemed as a meaningless exercise by our Legislature and must be interpreted to have some purpose. See Flexx Petroleum Corp. v. Director, Div. of Taxation, 12 N.J.Tax 1, 12 (Tax 1991) (court must avoid any interpretation “that will render any part of a statute inoperative, superfluous or meaningless” or “attribute to the Legislature a deliberate attempt to make a meaningless change”) (internal quotations omitted). These “principles of statutory construction also apply to” regulations. Clorox Prods. Mfg. Co. v. Director, Div. of Taxation, 23 N.J.Tax 260, 269 (Tax 2006).
The GIT credit is “a matter of grace and a state may impose conditions on its application. The New Jersey Legislature has expressly imposed conditions on the calculation of the credit for out-of-state tax paid and has limited entitlement to credit to income taxed by another state in the same tax year.” Laurite v. Director, Div. of Taxation, 12 N.J.Tax 483, 490-91 (Tax 1992), aff'd 14 N.J.Tax 166 (App.Div.1993), certif. denied, 135 N.J. 301, 639 A.2d 301 (1994). Nonetheless, “Ltjhere is a vast difference between escaping the obligation to pay a tax and paying a tax, albeit a reduced amount, because of a credit. The taxpayer here recognizes that he must pay a tax ...; he simply seeks a credit for taxes paid to New York.” Sutkowski v. Director, Div. of Taxation, 312 N.J.Super. 465, 475-76, 712 A.2d 229 (App.Div.1998). Therefore, “if there is an ambiguity attendant to the issue *464 of a tax credit, the rule of construction is one that favors the taxpayer, not the government.” Ibid.

III. The GIT Act’s Credit Provision for Taxes Paid to Another State or Political Subdivision

A credit against the GIT is allowed for taxes paid to another taxing State or its political subdivision by N.J.S.A. 54A:4-1(a). This statute reads:
A resident taxpayer shall be allowed a credit against the tax otherwise due under this act for the amount of any income tax or wage tax imposed for the taxable year by another state of the United States or political subdivision of such state, or by the District of Columbia, with respect to income which is also subject to tax under this act, except as provided by subsections (c) and (d) of this section.
The statutory goal and purpose is to provide relief from multiple taxation of the same income. Sorensen v. Director, Div. of Taxation, 184 N.J.Super. 393, 2 N.J.Tax 470, 475, 446 A.2d 213 (Tax 1981); Jenkins v. Director, Div. of Taxation, 184 N.J.Super. 402, 4 N.J.Tax 127, 133, 446 A.2d 217 (Tax 1982).
The credit is allowed only if the income taxed under the GIT is “actually taxed” by both New Jersey and the other jurisdiction. Ambrose v. Director, Div. of Taxation, 198 N.J.Super. 546, 553, 487 A.2d 1274 (App.Div.1985) (N.J.S.A. 54A:4-1(a) “shield[s] only that portion of the taxpayer’s income which is subject to tax in the other state .... [because] we perceive a clear legislative design to limit the credit to income actually subject to taxation in the foreign jurisdiction”); Chin v. Director, Div. of Taxation, 14 N.J.Tax 304, 309 (Tax 1994) (“[i]t is clear from the case law in this State that income not actually taxed by the other jurisdiction is to be excluded from the numerator of the resident credit fraction”). Thus, for instance, if New York and NYC “impose multiple taxes on the same income, it is not the purpose of the New Jersey statute to protect the taxpayer from such foreign multiple intrastate taxation of the same income.” Jenkins, supra, 184 N.J.Super. 402, 4 N.J.Tax at 133, 446 A.2d 217.
At issue here is the credit limitation with respect to S Corporation income allocated to New Jersey. See N.J.S.A. 54A:4-1(a) (credit is allowed “except as provided by subsection (c)”). Subsee *465 tion C bars a credit “for the amount of any income tax or wage tax imposed for the taxable year on S Corporation income allocated to this State.” N.J.S.A. 54A:4-1(c).
Subsection C was enacted by L. 1993, c. 173, § 7. This law introduced taxation of S corporations on a corporate level as well as on a shareholder level. Thus, an S corporation was subject to CBT at a tax rate of 2.375% as opposed to the 9.375% imposed on a regular or C corporation, and such corporate level tax was “similar to the treatment provided by New York State,” but unlike the federal income tax treatment imposing no corporate level tax. Assembly Approp. Comm. Statement to Assembly Nos. 273 and 870 (June 1993). At the same time, resident shareholders would be taxed “on all of their S corporation income regardless of source.” Ibid. As a result, “technical changes” were also effectuated to the GIT “to provide for the taxation of S corporation shareholders.” Ibid. Neither party provided the court with any legislative history that addressed Subsection C specifically, nor could this court find any.

TV. The Director’s 2003 Regulation Interpreting the Credit Limitation for S corporation income

The Director effectuated Subsection C by amending the GIT regulations effective June 2003. See 35 N.J.R. 1384(a) (March 2003) (proposing amendments to N.J.A.C. 18:35-4.1 in order to “recognize! ] the recently enacted statutory provisions in N.J.S.A. 54A:4-1(c) ... and clarif[y]” that subsection “by explaining the limitation of the credit for taxes paid to another jurisdiction on S corporation income paid by a resident shareholder ... ”); 35 N.J.R. 3386(a) (July 2003) (adopting the proposed regulations without change due to absence of any public comments). These regulations provided as follows:
(a) The following provisions shall govern the computation of the tax credit by reason of any income or wage tax paid to another state or political subdivision of such state under the New Jersey [GIT] Act.
1. N.J.S.A. 54A:4-1 provides for a credit against the New Jersey [GIT] as follows: Resident credit for tax of another state.
i. A resident taxpayer shall be allowed to credit against the tax otherwise due under this act for the amount of any income tax or wage tax imposed for the *466 taxable year by another state of the United States or political subdivision of such state, or by the District of Columbia, with respect to income which is also subject to tax under this act, except as provided by (a)3 below.
[[Image here]]
3. N.J.S.A. 54A:4-1(b), (c) and (d) provide for a limitation on the credit for tax paid to another state or political subdivision. The amount of the resident taxpayer credit for tax paid to another state or political subdivision shall not exceed the percentage derived by dividing income subject to tax in the other jurisdiction by the taxpayer’s entire New Jersey income multiplied by the tax otherwise due under the ... [GIT] Act.
i. The amount of the resident taxpayer credit for tax paid to another state or political subdivision shall not exceed the percentage of tax derived by diriding income subject to tax in the other jurisdiction by the taxpayer’s entire New Jersey income multiplied by the tax otherwise due under the ... [GIT] Act.
ii. No credit shall be allowed for any income tax or wage tax imposed on S Corporation income allocated to this State as determined in accordance with N.J.S.A. 54A:5-10.
(1) When the New Jersey [CBT] allocation factor is 100 percent but the S Corporation in fact pays tax to another state based on or measured by income, the amount of income taxed, which qualifies for a reduction on the New Jersey [CBT] return, is deemed S Corporation income allocated outside of New Jersey. This S Corporation income is subject to the [GIT], In addition, if the taxpayer is required to file a personal income tax return in the other jurisdiction reporting the S Corporation income, the taxpayer would be eligible for credit for taxes paid to another jurisdiction.
[N.J.A.C. 18:35-4.1]
The regulations did not explain the meaning, intent or scope of the term “the amount of income taxed, which qualifies for a reduction on the New Jersey [CBT] return.” Ibid.
The Director provides a three-part argument why plaintiffs are not entitled to a credit for GIT under Subsection C and the above-quoted regulation. They are: (i) A-Teeh allocated 100% of its income to New Jersey for CBT purposes; (ii) A-Tech’s CBT return did not seek a reduction for “the amount of income taxed” by New York; and (iii) plaintiffs were not required to file a personal income tax return in NYC, the jurisdiction where A-Tech paid more than the minimum corporate income tax. Each argument is examined in turn.

A. GIT Credit is Unavailable for S Corporation Income Allocated to New Jersey

The Director’s first argument is that the plain language of Subsection C mandates a disallowance for the GIT credit where S *467 corporation income is allocated to this State. Since it is undisputed that A-Tech allocated 100% of its corporate income to New Jersey, plaintiffs are, according to the Director, foreclosed by law from receiving a GIT credit. He argues that no further analysis is required in this regard despite the fact that plaintiffs reported and paid income tax to NYS on the pro-rata share of S corporation income also taxed in New Jersey.
Plaintiffs argue that a statutorily mandated allocation of 100% of corporate income to New Jersey under the CBT Act should not prevent the application of the GIT credit pursuant to Subsection C. In other words, an allocation of corporate income under the CBT should not mechanically control the interpretation and application of the GIT credit provision. Plaintiffs maintain that the term “allocated” in Subsection C should be interpreted to mean “subject to tax,” and thus “actually taxed,” as that term has been construed by our courts in the interpretation of N.J.S.A. 54A:4-1(a). Since it is undisputed that a portion of the pro-rata share of S corporation income was actually subjected to income tax by both New York and New Jersey, plaintiffs contend that the resident credit should be applied.
The Director counters that the term “allocated” must be interpreted under the provisions of the CBT Act which imposes a tax for the privilege of conducting business. Therefore, he argues, regardless of the actual double taxation of income on an individual level, the 100% allocation under the CBT controls in this case, and requires a denial of any GIT credit.
Subsection C plainly bars a credit for any income tax “imposed on ... S corporation income allocated” to New Jersey. There is no legislative history indicating the meaning or intent of the use of the term “allocated.” As noted above, L. 1993, c. 173 introduced taxability of S corporations at the corporate level under the CBT (like New York but unlike the federal income tax system), albeit at a lower tax rate than a C corporation, and at the individual shareholder level under the GIT Act (to make up for the lower rate of CBT at the corporate level). That law also simultaneously made several “technical changes” to the GIT in this regard. See *468 Assembly Approp. Comm. Statement to Assembly Nos. 273 and 870, supra. Subsection C may have likely been one of the technical changes. Thus, because the legislation dealt with taxing a corporate entity at the CBT level, and that entity’s income at the corporate and shareholder level, it is possible that the Legislature used the CBT terminology of “allocated” in Subsection C because the CBT Act taxes corporate income on the basis of allocation. See N.J.S.A 54:10A-5(c)(1); N.J.A.C. 18:7-7.4 (defining “allocation factor” as the “the proportionate part of a taxpayer’s entire net income used to determine a measure of its tax under the [CBT] Act”).
Moreover, N.J.S.A. 54A:5-10, the GIT provision addressing the taxability of individual shareholders of an S corporation, defines terms such as “S corporation income allocated to” and “not allocated to” New Jersey, both types of such income being a shareholder’s pro-rata share of S corporation income, a category of income subject to GIT. That statute incorporates the CBT Act. It defines “S corporation income allocated to” New Jersey as the “portion of the S corporation income that is allocated to this State by the allocation factor of the corporation for the [tax year] pursuant to ... [N.J.S.A.] 54:10A-6 through 54:10A-10, reduced by any tax imposed pursuant to [N.J.S.A. 54:10A-5.]” Further, “S corporation income not allocated to” New Jersey is defined as “S corporation income less S corporation income allocated to this State.” N.J.S.A. 54A:5-10.
N.J.S.A. 54A:5-10 was enacted at the same time and as part of the same law (L. 1993, c. 173) taxing S corporation income on a corporate and on a shareholder level. Therefore, the contemporaneous enactment of this provision, and the express incorporation of the CBT provisions therein indicates clear legislative expression that the term “allocated” in Subsection C means corporate income, the allocation of which is to be determined under the CBT Act.
Under the CBT Act, specifically, N.J.S.A. 54:10A-6, a corporation such as A-Tech, which did not have a regular place of business outside of New Jersey, had to allocate 100% of its *469 corporate income to New Jersey.[2] Nonetheless, the application of the CBT provisions for interpretation of the term “allocated” does not require a denial of the GIT resident credit in this case. Our Legislature could surely not have intended this result where, as here, A-Tech was required to allocate its corporate income to New Jersey despite its undisputed sourcing of the same to New York. Further, the Director’s own regulations permit a GIT credit for shareholders of S corporations which allocate 100% of their corporate income to New Jersey.
It is well-established that the legislative intent of N.J.S.A. 54A:4-1 is to prevent multiple taxation of the same income actually taxed by foreign jurisdictions. Mannino v. Director, Div. of Taxation, 24 N.J.Tax 433, 442 (Tax 2009) (“[t]he goal in offering a tax credit for taxes paid to other jurisdictions is to avoid double taxation of money taxed and actually paid to both New Jersey and a foreign jurisdiction”). This is despite the fact that a New Jersey resident is taxed on all categories of income, whatever its source. Hough v. Director, Div. of Taxation, 2 N.J.Tax 67, 72 (Tax 1980), aff'd, 4 N.J.Tax 528 (App.Div.1981).
Further, the credit provision protects a taxpayer “from double taxation [of] the non-New Jersey source income taxed by another jurisdiction” by separating “foreign income from New Jersey income.” Jenkins, supra, 184 N.J.Super. 402, 4 N.J.Tax at 133, 446 A.2d 217 (emphasis added). As to such foreign income, New Jersey “yields, under N.J.S.A. 54A:4-1, to the foreign jurisdiction by granting a credit against its own tax for taxes paid by a New Jersey resident to the foreign jurisdiction on foreign source income.” Kanarek v. Director, Div. of Taxation, 14 N.J.Tax 589, 594 (Tax 1995).
Given this explicit precedent, the court rejects the Director’s argument that the 100% allocation mandated by the CBT Act (for tax year 2006) must prevail over the goal and purpose of N.J.S.A. 54A:4-l(a). Here, there is no dispute that A-Tech sourced most *470 of its income to NYS and NYC. There is also no dispute that the portion of A-Tech’s income passed-through to plaintiffs was subject to personal income tax both in New York and in New Jersey at the shareholder level. Under the legislative intent and design to prevent double taxation of the same income, plaintiffs should be able to use the GIT credit to offset some of their GIT liability.
This conclusion does not subvert Subsection C. The Legislature likely intended that the GIT credit should not be provided for income allocated in New Jersey because New Jersey can properly and fully tax such income, therefore, to that extent “[t]he New Jersey source income ... need not be shielded from double taxation, [and] remains subject to New Jersey tax undiminished by foreign tax credit.” Jenkins, supra, 184 N.J.Super. 402, 4 N.J.Tax at 133, 446 A.2d 217. However, the logical corollary of this principle is that New Jersey cannot tax income properly allocated and taxed outside of its borders, therefore, that portion is allowed a credit to resident shareholders, who are subject to the GIT on all of their S corporation income “regardless of source.” Assembly Approp. Comm. Statement to Assembly Nos. 273 and 870, supra. This conclusion is buttressed by the fact that the limitation in Subsection C is for “income allocated to New Jersey” as opposed to a shareholder’s “pro-rata share of S corporation income” which comprises both S corporation income allocated to New Jersey and S corporation income not allocated to New Jersey. N.J.S.A. 54A:5-10. In other words, the Legislature intended to subject a resident shareholder to GIT on passed-through S corporation income from all sources (within and without New Jersey) but provide a GIT credit only for passed-through S corporation income allocated or sourced outside New Jersey. This intent is accomplished by Subsection C’s denial of a GIT credit for income allocated or sourced within New Jersey.
That the legislative intent and design of the GIT credit provision should prevail over the required 100% allocation under the CBT provision is also supported by persuasive law preceding New Jersey’s taxation of S corporations and simultaneously of passed-through S corporation income, and hence, in a somewhat different factual context. Thus, in Sutkowski, supra, the issue was the *471 Director’s interpretation of the GIT credit for income taxes paid to New York for distributions made by a New York electing S corporation. The Director partially denied a GIT credit on the distributions because New Jersey taxed the same as dividends under a tracing rule reducing the distributions by the retained earnings, thus, reducing the numerator of the credit fraction), whereas New York taxed the same as “income.” 312 N.J.Super. at 471, 712 A.2d 229. The Appellate Division disapproved of the Tax Court’s ruling denying the credit noting that the “fact that the money being taxed in New York and New Jersey is the same money was apparently of no importance to the Tax Court.” Id. at 474, 712 A.2d 229. The higher court stated:
We do not believe the Legislature envisioned such a result. In our view, the Tax Court lost sight of the unambiguous words of the statute and the legislative principle that undergirds the resident tax credit. The legislative intent was to avoid double taxation of “income” which, but for the credit, would be taxed both in New Jersey and another state. The credit to be given is with respect to any “income tax ... imposed for the taxable year by another state ... with respect to income which is also subject to tax under this act.” N.J.S.A. 54A:4-l(a) (emphasis added). The resident tax credit provision does not focus on the taxable event or the label placed on a given source of income. Simply stated, if the same income is taxed in another state and in this state for the same tax year, the Legislature intends the New Jersey resident taxpayer to receive a credit for the tax paid in the other state. Although the “income subject to tax” in the GIT is labeled “dividends,” the fact of the matter is that it is still “income,” and if it is the same money that is being taxed in New York under the label of “net income” in the same tax year, the Legislature has contemplated that a credit should be given.
[Id. at 474-75, 712 A.2d 229].
Rejecting the Director’s argument that allowing credit would “create an unwarranted distinction between New Jersey resident shareholders of corporations that elect to be taxed as S corporations and resident shareholders of corporations that do not elect to be taxed as such” the court stated:
the simple answer is that the Legislature intended to avoid multiple state taxation of “the same income.” If, as a result of a corporation’s election to be taxed as an S corporation, another state’s tax on the income of that corporation causes a New Jersey resident shareholder to be subjected to tax on the same income in the same tax year, the Legislature’s intent was to give the New Jersey shareholder a credit toward the payment of the New Jersey GIT. It is not for the Director or this court to second guess the Legislature’s wisdom.
[[Image here]]
Thus, we must return to our understanding of the legislative policy that undergirds the resident tax credit and restate what we said before. The Legislature wanted to *472 avoid double taxation on a resident taxpayer for income that was subject to tax in another state and in New Jersey during the same taxable year. It is obvious to us that where a New Jersey taxpayer has paid a tax on S corporation income in another state and where the S corporation income was sufficient to cover the distribution to the New Jersey shareholder that was subject to that tax, the same income has been subject to tax in two states. In those circumstances, the Legislature intended to give the New Jersey resident a tax credit. There is nothing in the statute or the legislative scheme as a whole suggesting that the Legislature intended to give less than a full credit.
[Id. at 476, 482-83, 712 A.2d 229].
Although the Appellate Division’s findings were made when New Jersey did not tax S corporations as pass-through entities, and thus, Subsection C was not the law,[3] the higher court’s findings that the technical labels or mechanical taxation of income should cede to the scope and intent of N.J.S.A. 54A:4-1(a) fully applies here where the Director is interpreting the term “allocated” to effectively deny a credit for tax paid on passed-through S corporation income that was undisputedly taxed by New Jersey and New York, and was allocated only to New Jersey because of a statutory mandate existing in tax year 2006.
The court’s finding also does not undermine the CBT Act and allocation thereunder. Whether or not the CBT is simply a privilege tax, cf. Stryker Corp. v. Director, Div. of Taxation, 18 N.J.Tax 270, 278 (Tax 1999) (CBT is not “imposed merely or solely for the privilege of doing business in New Jersey” but “is a state tax applying generally to all domestic and foreign corporations, except those exempted ...”), aff'd, 168 N.J. 138, 773 A.2d 674 (2001), the CBT Act itself recognizes that income allocated to New Jersey may very well be taxed by another or several jurisdictions. Thus, while N.J.S.A. 54:10A-6 (“CBT Section 6”) provides a three-factor formula in determining corporate income allocable to New Jersey, or 100% allocation of income for entities such as A-Tech, N.J.S.A 54:10A-8 (“CBT Section 8”) provides the Director with authority to adjust the allocation factor, or apply *473 any “method” to ensure and “effect a fair and proper allocation of’ corporate income to New Jersey when the CBT Section 6 formula is not properly reflective of the entity’s income “reasonably attributable” to New Jersey. See also F.W. Woolworth Co. v. Director of Div. of Taxation, 45 N.J. 466, 497, 499, 213 A.2d 1 (1965) (the Legislature “intended” that “the Director not only has the authority but also the obligation to consider [CBT Section 8] adjustment[s]” because “taxation of multi-state businesses should be administered on a basis which is equitable, and not merely constitutional, to the corporate taxpayer as well as to the State”). Consequently, although the plain language of CBT Section 6 (as it existed for tax year 2006), indicates a “clear legislative purpose ... to provide a means of determining the ‘allocation factor’ of corporations for the purpose of computing the” CBT, nonetheless, relief from double taxation is available under CBT Section 8 even to entities such as A-Tech, which were required to allocate 100% of corporate income to New Jersey. S.M.Z. Corp. v. Director, Div. of Taxation, 193 N.J.Super. 305, 312-13, 316-18, 473 A.2d 982 (App.Div.1984).
Thus, the adjustment to taxable entire net income under CBT Section 8 affords relief from double taxation of corporate income allocated to New Jersey versus other jurisdictions, a premise analogous to the legislative intent of avoiding double or multiple tax on personal income under N.J.S.A. 54A:4-1(a). And because N.J.S.A. 54A5-10 incorporates CBT Section 8 in addition to CBT Section 6, the allocation of income under the CBT Act cannot be read in isolation of the CBT provisions providing relief from such allocation if the allocated income is subject to double or multiple taxation.
In sum, when the Legislature used the term “allocated” in Subsection C, it did not require nor intend that the determination of the allocation be accomplished in a manner that would deny credit to income that should not be allocated to, and thus, not taxed or taxable by, New Jersey. Rather, the Legislature’s restriction of credit was only as to income properly allocated to New Jersey. Clearly, then a resident shareholder of an S corporation would and should be afforded relief from double or multiple *474 income tax on foreign sourced income, which is what plaintiffs seek here.
The restriction in Subsection C must be read in conjunction with the grant of credit in N.J.S.A. 54A:4-1(a). See e.g. Stiber v. Director, Div. of Taxation, 9 N.J.Tax 628, 628 (Tax 1988) (the limitation in “section (b) must be read in conjunction with section (a),” thus income not taxed by New Jersey cannot comprise the numerator portion of the credit fraction). An isolated reading of Subsection C will result in the exception swallowing the rule, an unsustainable result. See International Bus. Mach. Corp. v. Director, Div. of Taxation, 26 N.J.Tax 102, 112 (Tax 2011) (“an isolated reading of part of a statute cannot be invoked to defeat a reasonable and fair construction of the entire statute”) (internal quotations and citations omitted). A harmonious interpretation of Subsection C in conjunction with N.J.S.A. 54A:4-1(a) and 54A:5-10 requires a conclusion that a credit against the GIT for income taxes paid on foreign sourced S corporation income is allowed, provided, however, such income was actually taxed to the individual shareholder by that foreign jurisdiction.
Significantly, the Director himself has achieved this harmonious interpretation by promulgating regulations which recognize that an S corporation which allocates 100% of its corporate income to New Jersey can nevertheless have foreign sourced income for which the GIT credit is available. His regulations initially provide that S corporation income allocated outside New Jersey is taxable under the GIT Act as a shareholder’s pro-rata share of S corporation income, and such allocation is to be determined under N.J.S.A. 54A:5-10 (the GIT provision defining “S corporation income allocated to” and “not allocated to” New Jersey). N.J.A.C. 18:35-4.1(a)(3)(ii)(1). However, that shareholder is not barred from seeking a credit for taxes paid to a foreign jurisdiction if he or she “is required to file a personal income tax return in the other jurisdiction reporting the S Corporation income.” N.J.A.C. 18:35—4.1(a)(3)(ii)(1).
After enacting a regulation allowing GIT credit to a shareholder of an S corporation, the Director cannot credibly argue that this *475 court should ignore or deny an analysis and applicability of N.J.A.C. 18:35-4.1(a)(3)(ii)(1).[4] That Subsection C did not elucidate or detail the methods of allocating S corporation income to New Jersey and exceptions from the same, which the Director’s regulation reasonably and properly accomplishes, does not mean that the Legislature barred their consideration.
In sum, under the facts of this case, that A-Tech was mandated to allocate 100% of its corporate income to New Jersey under the then existing CBT law regardless of the foreign sourced and taxed corporate income, does not in and of itself render N.J.S.A. 54A:4-1(a) and N.J.A.C. 18:35-4.1 automatically inapplicable.

B. A-Tech Does Not Qualify for a Reduction under the CBT Act

The Director’s second argument is that plaintiffs are ineligible for the GIT resident credit because as required by his regulation, N.J.A.C. 18:35—4.1(a)(3)(ii)(1), A-Tech’s CBT return did not seek a reduction of its CBT liability.[5] According to the Director, for income to be deemed as not allocated to New Jersey ie., that “which qualifies for reduction” on the CBT return, it requires an affirmative application for such reduction, and an affirmative grant of such application by the Director, after which plaintiffs qualify for the GIT credit.
The Director’s argument is premised upon the CBT regulation, N.J.A.C. 18:7-8.3 which requires a taxpayer to comply with certain *476 procedures. Titled “Right of Director to independently compute allocation factor,” the regulation provides as follows:
(b) Reduction in tax for income duplicated on a return filed with another State pursuant to N.J.S.A. 54:10A-8 and this rale-100 percent allocation factor:
1. Eligibility:
1. Where the Business Allocation Factor under [CBT] Section 6 ... is 100 percent and the taxpayer in fact paid a tax based on or measured by income to a foreign state, resulting in a duplication of income being taxed, it may, under [CBT] Section 8 ..., apply for a reduction in the amount of its tax. The reduction is available only where the taxpayer in its own right acquired a taxable status in the foreign state by reference to at least one of the criteria described at N.J.A.C. 18:7-1.6 as if the [CBT] Act were the law of that foreign state.
Example: S corporation does not maintain a regular place of business outside New Jersey, other than a statutory office. It was not a domestic corporation in State X, nor did it meet any of the other criteria described at N.J.A.C. 18:7-1.6 in that State which would have created a taxable status in New Jersey. Although it was not itself doing business in State X, it was a member of an affiliated group of corporations which conducted a unitary business in that State and as such is permitted or required to join in filing a combined or consolidated return in State X. In fact, it did so.
Any duplication of income being reported to New Jersey and to State X may not form the basis for a reduction in the tax.
2. Method:
i. An eligible taxpayer computes its reduction on a rider attached to its return by demonstrating that a part of entire net income is duplicated on a return filed with another state. It must attach a copy of all relevant portions of the return filed with the foreign state relating to income reported, the computation of all components of its apportionment fractions and the computation of the tax paid to the foreign state. It must also submit a schedule apportioning all property, receipts and payroll to a common denominator defined consistent with the return. For purposes of calculating the reduction:
(1) It may be based upon only so much of adjusted entire net income appearing on its [CBT] Return as is reported to the foreign state;
(2) The formula apportionment used in the foreign state may not exceed the Business Allocation Factor as determined under [CBT] Section 6 of the Act and these rules;
(3) It must be computed by using the lesser of the tax rates of the foreign state or the tax rate under the [CBT] Act.
[N.J.A.C. 18:7—8.3(b) ]
The Director points out that A-Tech did not claim any credit for taxes paid to New York on its CBT return, nor did it compute any reduction by attaching a computational rider to the CBT return, and therefore, the Director could not and did not grant such reduction of the CBT. In the absence of this affirmative grant, the *477 Director states, the plaintiffs are foreclosed from obtaining a GIT credit.
Plaintiffs argue that “qualifies” in N.J.A.C. 18:35—4.1(a)(3)(ii)(l) should mean “eligible” for reduction, and the undisputed facts in this case, as further evidenced by the corporate returns filed in NYS and NYC, establish that A-Tech was eligible for a reduction of its CBT for 2006. They point out that if N.J.A.C. 18:7-1.6, the regulation incorporated in N.J.A.C. 18:7-8.3(b)(1), was the law of New York, then A-Tech would have been subject to tax in New York because it did business there and derived receipts from sources there.[6]
The question then is whether “qualifies for a reduction on the [CBT] return” in N.J.A.C. 18:35-4.1 (a)(3)(ii)(1) means “actually applied for and received a reduction” of the CBT as the Director maintains, or if it means “was eligible for” a reduction as plaintiffs argue. The court concludes that the latter interpretation is correct.
The CBT regulation relied upon by the Director itself demarcates “eligibility” from “method,” and under “method” specifies that the requirements apply to an “eligible” taxpayer. N.J.A.C. 18:7-8.3(b)(1) and (b)(2). Further, the criteria for being eligible for a reduction are set forth in N.J.A.C. 18:7—8.3(b)(1), namely, a taxpayer has a 100% allocation under CBT Section 6; that taxpayer “in fact” paid income tax to a foreign state; such payment results in a “duplication of income being taxed;” and the taxpayer has a “taxable status” in the foreign state “by reference to at least one of the criteria described at N.J.A.C. 18:7-1.6.” These are the qualifications for being eligible for a reduction of tax under CBT Section 8.[7]
*478 The corporate taxpayer’s application in this regard, is then, the procedural method of obtaining the reduction on the corporate level. The Director’s limitation of the term “qualifies” in the GIT regulation, N.J.A.C. 18:35—4.1(a)(3)(ii)(l), is unsupported by that regulation or the CBT regulation N.J.A.C. 18:7-8.3(b). Nor does this court read N.J.A.C. 18:7—8.3(b) as disqualifying a corporate taxpayer from being eligible for a reduction because it fails to “apply for a reduction.”* *****[8] See e.g. Hess Realty Corp. v. *479 Director, Div. of Taxation, 10 N.J.Tax 63, 80 (Tax 1988) where the Director proclaimed that he had not “not disregarded” the taxpayer’s “out-of-state activities” because he had voluntarily provided a credit for “income taxes” paid to “other jurisdictions,” and thus, “concede[d] that, even though [the taxpayer] did not maintain a regular place of business outside this State as defined, a 100% allocation factor would not fairly and properly reflect the portions of [its] net income ... that are reasonably attributable to New Jersey.” Therefore, an absence of a computational rider to the CBT return, does not, per se, require a conclusion that the taxpayer is not “eligible” for a reduction in income for purposes of applying the GIT credit.
It should be noted that in S.M.Z. Corp., supra, the Appellate Division rejected the Tax Court’s reliance upon the same regulation, N.J.A.C. 18:7-8.3(b), and consequent conclusion that a 100% allocating New Jersey corporation was not entitled to a CBT Section 8 adjustment. 193 N.J.Super. at 318, 473 A.2d 982. The Appellate Division stated that the regulation only “amplified] and elarif[ied] a taxpayer’s right to allocate under [CBT] Section 6 and not the right to adjustment under [CBT] Section 8” and “N.J.A.C. 18:7-8.3” does not “prevent! ] the director” from “exercis[ing his] discretion in making a Section 8 adjustment. A contrary interpretation would, to the above-stated extent, render it invalid.” S.M.Z. Corp., supra, 193 N.J.Super. at 318, 473 A.2d 982. The court reversed the Tax Court’s decision “to the extent it held that the director is not authorized to make a Section 8 adjustment *480 unless a taxpayer allocates a portion of its income and net worth to another state.” Ibid.[9] Instead, the court relied upon N.J.A.C. 18:7-10.1, the “regulation that deals with [CBT] Section 8 adjustments.” S.M.Z. Corp., supra, 193 N.J.Super. at 315, 473 A.2d 982. That regulation clearly provides that any “adjustment of the business allocation factor may be made by the Director upon his own initiative or upon request of a taxpayer.” N.J.A.C. 18:7-10.1(c) (emphasis added).
The language in N.J.AC. 18:7-10.1 can only mean that a fair allocation of corporate income can be made by the Director even without an affirmative “application,” such as a computational rider attached to the CBT return by the taxpayer. The Director’s argument that a GIT credit is contingent upon the corporate taxpayer first making a request for a CBT Section 8 adjustment, and then the Director granting such adjustment, and only then providing a GIT credit, is not supported by the legislative scope or intent of the GIT credit provision. Not only that, it contravenes the intent of CBT Section 8 and the implementing regulations, both of which have been interpreted to mean that the Director has not just the discretion, but an “obligation to adjust a particular allocation formula if it is unfair in that it does not ‘effect a fair and proper allocation of the [taxpayer’s] entire net income and the entire net worth reasonably attributable to the State.’” Hess Realty, supra, 10 N.J.Tax at 82 (quoting F.W. Woolworth, supra, 45 N.J. at 497, 213 A.2d 1). The Director’s obligation to ensure fairness in the system of allocating income to New Jersey should be balanced with compliance with the procedural requirements of seeking a reduction, such that the latter informs but does not control the former, and by extension, informs but does not defeat application or allowance of the GIT credit.
*481 The court’s conclusion does not, of course, require the Director to exercise his discretion under CBT Section 8 in the absence of any information in his possession necessary to make an adjustment or reduction. Thus, the court is not making any finding that the “method” of seeking a reduction or adjustment prescribed in N.J.A.C. 18:7-8.3(b) or N.J.A.C. 18:7-10.1, does not require compliance or is invalid. Rather, the court finds that the Director cannot arbitrarily deny a GIT credit on grounds that A-Tech did not provide a computational rider detailing the allocation of income inside and outside New Jersey when (i) A-Tech’s 2006 CBT return reported the income taxes paid by A-Tech to NYS and NYC; (ii) the Director had these corporate returns which contained the necessary information; and, (iii) the Director did not claim or argue impossibility in determining A-Tech’s qualification for reduction of its CBT. The court recognizes that it would be within the Director’s authority in administering taxes to deny any untimely claims for refund by A-Tech in connection with a CBT Section 8 relief (reduction of CBT for tax year 2006), which was not claimed on a corporate return.[10]
The Director points out that regardless of eligibility, N.J.A.C. 18:7-8.3(b) addresses only a “foreign state” and N.J.A.C. 18:7-10.1 addresses only a “State.” Here, A-Tech paid income tax only to NYC and a minimum franchise tax to NYS. Therefore, it would not qualify for a reduction under CBT Section 8 since NYC is not a “state.”
The argument is untenable. Although CBT Section 8 references “the State” when it provides the Director the authority to adjust the CBT Section 6 allocation factor, the reference is to New Jersey, not other States. See N.J.A.C. 18:7—10.1(b); Hess Realty, supra, 10 N.J.Tax at 81 (“the Legislature invested the Director *482 with broad authority to adjust a [CBT Section] 6 allocation factor if it does not properly reflect a taxpayer’s business activity reasonably attributable to this State”).
Nor can CBT Section 8 be construed to limit the relief only to income tax imposed by other “States.” Rather, that provision was intended to ensure that income is properly allocated and apportioned to New Jersey such that New Jersey receives its fair share of taxes, but at the same time complies with basic legal principles as to New Jersey’s limitations in taxing income sourced outside its borders. See N.J.S.A. 54:10A-8; Hess Realty, supra, 10 N.J.Tax at 80-81 (“[i]t is an implicit premise of the CBT that under certain circumstances the apportionment formulas outlined in [CBT Section] 6, ie., either the three-factor formula or the 100% business allocation factor, may not fairly approximate a taxpayer’s true ... net income attributable to its New Jersey activities”); Brunswick Corp. v. Director, Div. of Taxation, 11 N.J.Tax 530, 539 (Tax 1991) (“[t]he purpose of an allocation factor is to determine fairly what percentage of the value of a multi-state eorpoi’ation is generated in-state”), aff'd, 135 N.J. 107, 638 A.2d 805 (1994).
That the Director’s regulations allude only to “foreign State” or “another State” in N.J.AC. 18:7-8.3(b) cannot limit and frustrate the intent and scope of CBT Section 8. If it were so interpreted, the regulation cannot stand. S.M.Z. Corp., supra, 193 N.J.Super. at 318, 473 A.2d 982. Additionally, under this interpretation, the GIT credit would never be available for S corporation income allocated to a taxing jurisdiction which is not a State. Such a construction would clearly violate N.J.S.A. 54A:4-l(a) which grants the resident credit for any income taxes paid to “another state ... or political subdivision of such state ” as well as the Director’s own regulation which reads, “N.J.S.A. 54A:4-l(b), (c) and (d) provide for a limitation on the credit for tax paid to another state or political subdivision.” N.J.A.C. 18:35-4.1(a)(3) (emphasis added).[11]
*483 The Director, in promoting the income allocation regulation interpreting N.J.S.A. 54A:4-1, must have intended to include taxes paid to jurisdictions such as NYC, a political subdivision. Limiting the application of his GIT regulation to taxes paid to only “states” for this case is a wholly incorrect reading of the statute, which would result in double taxation, the very result the statute intends to avoid. “An administrative agency’s interpretation that is plainly at odds with a statute will not be upheld.” ADVO, Inc. v. Director, Div. of Taxation, 25 N.J.Tax 504, 511 (Tax 2010). The Director’s application of his regulations in the instant case is unreasonable because it thwarts the Legislature’s intent to prevent double taxation of the same income by political subdivisions and by New Jersey.

C. NYC Does Not Require a Filing of a Personal Income Tax Return

The final prong of N.J.A.C. 18:35—4.1 (a)(3)(ii)(1) reads: “In addition, if the taxpayer is required to file a personal income tax return in the other jurisdiction reporting the S Corporation income, the taxpayer would be eligible for credit for taxes paid to another jurisdiction.” The Director argues that plaintiffs do not qualify for a credit because NYC, where A-Tech filed a corporate income tax return, did not “require[ j” plaintiffs to file a personal income tax return. Plaintiffs argue that not only did A-Tech file a corporate tax return in and “report” income to NYS, but as required by the laws of New York, they also filed a combined nonresident personal income tax return reporting the New York sourced pro-rata share of S corporation income. Therefore, they complied with the requirements of the regulation.
NYC does not recognize S corporations. Thus, it only subjects the corporate entity to a franchise tax. See generally, N.Y.C. Admin. Code 11-602; 2006 Instructions to Form NYC-3L (“an S corporation is subject to General Corporation Tax and must file ... Form NYC-3L ...); Publication 35, New York Tax Treat *484 ment ofS Corporations and Their Shareholders 1, 7 (March 2000) (“New York City does not recognize S election status ... [thus] a federal S corporation that makes the S election for [NYS] purposes would still be a C corporation for purposes of [NYC’s] general corporation tax”). Thus, there is no passed-through S corporation income at the shareholder level in NYC. Further, NYC no longer imposes a personal income tax on nonresidents.[12] Accordingly, there is no personal income tax return that can or should be filed independently with NYC. Cf. Publication 35, supra, at p. 22 (shareholders of an S corporation which is treated as a C corporation are not taxed on their pro-rata share of S corporation income but only upon actual distributions, and nonresident shareholders “are not subject to” New York income tax).
NYS however, taxes income earned or sourced in New York by a nonresident. See generally N.Y. Tax Law § 601(e)(1) (imposing income tax on “taxable income which is derived from sources in this state” which is “equal to the tax base multiplied by the New York source fraction”). And since NYS recognizes S corporations, it subjects the passed-through S corporation income to a nonresident shareholder to NYS personal income tax. See N.Y. Tax Law § 631(a)(1)(B) (defining “New York source income of a nonresident” to include “his pro rata share of New York S corporation income”); N.Y. Tax Law § 632(2) (the “New York source income of a nonresident shareholder of an S corporation” which has made an election to be treated as an New York S corporation includes “only the portion derived from or connected with New York sources of such shareholder’s pro rata share of items of S corporation income, loss and deduction entering into his federal adjusted gross income” as adjusted by certain add backs). See also Publication 35, supra, at p. 22 (nonresident shareholders *485 of NYS electing S corporations are taxed on their pro-rata share of items of S corporation income “derived from New York sources” which sourcing “is determined at the corporate level”).
A-Tech filed a corporate franchise tax return as an S corporation in NYS (using Form CT-3-S) and as a C corporation in NYC (using Form NYC-3L). A-Tech thus “reported” its corporate income sourced to both jurisdictions accordingly. Plaintiffs, as required by New York personal income tax laws, reported and paid personal income tax upon the pro-rata share of NYS sourced passed-through income to NYS. For NYC tax law purposes, plaintiffs were not required to report any passed-through income from A-Tech, nor were they required to file a nonresident personal income tax return to NYC. Therefore, the Director’s argument that plaintiffs fail the requirements of his regulations is unavailing.

V. The Director’s 2008 Regulation Denying Credit if the S corporation Paid a Minimum Tax

The Director’s final argument is that A-Tech only paid a minimum franchise tax to NYS, therefore, regardless of the fact that plaintiffs may be deemed by the court to fit within the requirements of N.J.A.C. 18:35-4.1(a)(3)(ii)(1), they should not be afforded the GIT credit. He relies upon a 2008 amendment to those regulations.
The Director’s 2008 amendment to the GIT credit regulation disallows GIT credit if the S corporation paid only the minimum franchise tax in the other taxing jurisdiction. It provides:
(2) Payment of a minimum tax to another state by an S Corporation does not fulfill the criteria of (a)(3)(ii)(1) above. Therefore, income is not deemed to be S corporation income allocated outside of New Jersey for [GIT] purposes. If the taxpayer is required to file a personal income tax return in the other jurisdiction reporting S Corporation income, the taxpayer is not eligible for a credit for taxes paid to the other jurisdiction.
[N.J.A.C. 18:35-4.1(a)(3)(ii)(2)]
The amendment was “to make clear that payment of a minimum tax to another state by an S Corporation does not qualify for the exception,” and that a credit is allowed only when “Corporation Income Tax is paid to another state and that [tax] qualifies as a *486 reduction on the New Jersey [CBT] return.” See 40 N.J.R. 874(a) (Feb. 2008).
Presumably, the Director is arguing that under N.J.A.C. 18:7-8.3(b) the CBT Section 8 relief is conditioned upon an actual payment of a tax “based on or measured by income to a foreign state, resulting in a duplication of income being taxed.” Therefore, a minimum franchise tax would not qualify for reduction on the CBT return as credit for taxes paid to another State.
NYS imposes a corporate tax measured by income, albeit at a reduced tax rate (the difference between the corporate franchise tax rate and personal income tax rate). See generally N.Y. Tax Law § 210(1)(g); Publication 35 supra at p. 6. Indeed, New Jersey adopted this taxing scheme when it started to recognize S corporations in 1993. Nonetheless, NYS like New Jersey also imposes a minimum tax. N.Y. Tax Law § 210(1)(d); Publication 35 supra at p. 6, 15. The S corporation pays the higher of the corporation franchise tax (at the lower rate) or the fixed dollar minimum tax § 210(1)(g); Publication 35 supra at p. 6.
Here, it is undisputed that A-Teeh paid $425 as the fixed dollar minimum tax. This is the amount based on a certain dollar amount of payroll allocated to NYS. See N.Y. Tax Law § 210(1)(d). Therefore, it is correct that A-Teeh did not pay a tax measured by its income to NYS as required by CBT Section 8 regulations.
The Director’s amendment disallowing GIT credit if the corporate income tax was a minimum franchise tax was effective as of July 7, 2008. See 40 N.J.R. 4225(a) (July 2008).[13] Although the *487 Director has not posited any justification for the retroactivity of the amendment to the credit regulation, he argues for the same by maintaining that the regulatory amendment applies to this matter. Plaintiffs do not challenge the validity of the regulatory amendment but argue that it does not apply to a 2006 tax year, and even if it did, they are entitled to GIT credit as A-Tech paid more than the minimum franchise tax to NYC.
The court here has found that A-Teeh’s payment of corporate franchise tax to NYC as a C corporation would not bar it from being eligible for CBT Section 8 relief. Therefore, it need not reach the merits of the retroactivity of the amendment addressing the minimum tax payment by an S corporation to the foreign jurisdiction and its applicability to the instant matter. Under the facts of this case, then, the minimum tax provision in the GIT regulation does not apply to defeat plaintiffs’ eligibility for the credit.[14]

*488
VI. The Director’s Regulation Interpreting Subsection C Violates The Commerce Clause

Plaintiffs’ final argument is that the Director’s regulations interpreting Subsection C violates the Commerce Clause as applied to them. The Director counters that Subsection C is not only facially valid, but also valid as applied because it passes the internal and external consistency tests.
“A court is duty-bound to give to a statute a construction that will support its constitutionality.” Whirlpool Properties, Inc. v. Director, Div. of Taxation, 208 N.J. 141, 151, 26 A.3d 446 (2011). It is presumed that “the legislature acted with existing constitutional law in mind and intended the act to function in a constitutional manner. The articulation of all of the essential elements demonstrating such legislative intent need not appear in the statutory language itself.” NYT Cable TV v. Homestead at Mansfield, Inc., 111 N.J. 21, 26, 543 A.2d 10 (1988) (citations and internal quotations omitted). Consequently, the court must reject any construction of a statute that would render it unconstitutional.
However, courts should not reach constitutional questions unless necessary to the disposition of the litigation. O’Keefe v. Passaic Valley Water Comm’n, 132 N.J. 234, 240, 624 A.2d 578 (1993). This is due to “a respect for other branches and levels of government, an awareness of the limitations of judicial power, sensitivity to the burdens of a constitutional adjudication, and appreciation that others may provide a more useful answer.” Id. at 241-42, 624 A.2d 578. Thus, “if the construction of a statute may obviate the need to consider its constitutionality, a court should first decide the statutory construction issue.” Zorba Con *489 tractors, Inc. v. Housing Authority, City of Newark, 362 N.J.Super. 124, 132, 827 A.2d 313 (App.Div.2003).
Here, the court has construed the statutory language and intent of Subsection C. It has found that the Director incorrectly applied his regulations interpreting Subsection C to the plaintiffs’ case for tax year 2006 when the CBT Act mandated a 100% allocation to New Jersey regardless of income sourced to jurisdictions outside of New Jersey. Therefore, it need not reach the merits of the constitutionality of Subsection C.
For the aforementioned reasons, the court denies the Director’s summary judgment motion, and grants plaintiffs’ cross-motion.

 A-Tech reported the minimum franchise tax paid to NYS and the amount of NYC corporate income tax, which A-Tech deducted on its federal corporate income tax return (Form 1120S).

 The "regular place of business” rule was subsequently abrogated in 2008. L. 2008, c. 120 § 2.

 Prior to L. 1993, c. 173, New Jersey "did not recognize S corporations” thus, a shareholder was subject to GIT only upon actual distributions made to him by the S corporation, which distributions "were treated in the same manner as dividends from regular corporations (C corporations)." Sutkowski, supra, 312 N.J.Super. at 470, 712 A.2d 229.

 The Director’s brief in support of his summary judgment motion relied upon his "plain language” argument so heavily that it failed to even mention, acknowledge and thus analyze his own interpretive regulation, N.J.A.C. 18:35-4.1(a)(3)(ii), even though the regulation applied to the tax year at issue herein. Plaintiffs point out that the Director’s regulations ameliorate any ambiguity in Subsection C, and while they do not challenge the validity of the GIT regulation, they question the manner in which it is applied to them.

 Although the GIT regulation N.J.A.C. 18:35-4.1 (a)(3)(ii)(1) does not explain what comprises "the amount of income taxed, which qualifies for a reduction on the New Jersey [CBT] return" both parties agree that reduction means the relief provided under CBT Section 8.

 Criteria for a foreign corporation acquiring a taxable situs includes: "(iii) doing business in this State; or (iv) employing or owning capital in this State; or (v) employing or owning property in this State; or (vi) maintaining an office in this State; or (vii) deriving receipts from sources within this State....” N.J.A.C. 18:7-1.6.

 A 100% allocating corporation gets a "credit ... for taxes actually paid to other states” pursuant to CBT Section 8. New Jersey Natural Gas Co. v. Director, *478 Div. of Taxation, 24 N.J.Tax 59, 64 (Tax 2008). The allocation formula under CBT Section 6 and the credit for taxes paid elsewhere would "not yield identical results” due to absence of tax, difference in tax rates or allowance of credits but generally, the CBT Section 6 apportionment "produces a smaller tax liability than ... a 100% apportionment less credits for taxes paid to other states under [CBT] Section 8.” Ibid.

 Effective January 16, 2007, the Director promulgated regulations which address N.J.S.A. 54A:5-10. N.J.A.C. 18:35-1.5(c)(5) provides that where a "Federal S corporation files a New Jersey [CBT] return allocating 100 percent of its income to New Jersey and, in accordance with N.J.A.C. 18:7-8.3, has income that qualifies as duplicated on the corporate income tax returns filed in New Jersey and another jurisdiction and if a credit for taxes paid to other jurisdictions is allowed on the New Jersey corporation business tax return," then "the qualified duplicated income is deemed to be allocated outside of New Jersey, and the entity is deemed to have an allocation factor outside of New Jersey.” (emphasis added). The accompanying example, however, simply notes that if an S corporation reports $15,000 as its entire net income on its CBT return and a 100% allocation factor, but is "is required to pay a corporate income tax to another state on $3,000 of income, which is also reported to and taxed by New Jersey,” then the "duplicated income qualifies for inclusion in the S corporation’s New Jersey calculation of a credit for taxes paid to other jurisdictions’’ thus, the $3,000 or "20% of its income” is "deemed to be allocated outside of New Jersey.” Example to N.J.A.C. 18:35-1.5(c)(5). The example thus, does not condition the allocation to an actual claim for such reduction on the corporate return, and a separate grant or allowance of the same by the Director.
In 2008, the Director added another provision somewhat mirroring Subsection C. This provision notes that an S corporation with a 100% allocation factor has income "deemed” to be allocated outside New Jersey if it "reports entire net income that is subject to Federal corporate income taxation” on its CBT return and on the "the corporate tax return of another state” and such “tax paid to the other state qualifies for a reduction on the [CBT] return.” N.J.A.C. 18:35—1.5(c)(7) (effective Sep. 15,2008). Under these circumstances, if a shareholder "is required to file a personal income tax return in the other jurisdiction reporting the S Corporation income, the taxpayer would be eligible for credit for taxes paid to another jurisdiction, subject to limitations.” Ibid. The Director explained that the amendment was added to clarify that "an *479 S Corporation shareholder with a New Jersey [CBT] allocation factor of 100 percent is eligible for a credit for taxes paid to another jurisdiction, if he or she reports entire net income that is subject to Federal corporate income taxation on the New Jersey [CBT] return and the corporate tax return of another state if the tax paid to the other state qualifies for a reduction on the New Jersey [CBT].” 40 NJ.R. 874(a) (Feb. 2008) (emphasis added). Neither the amendment nor its explanation notified a shareholder that his claim for a GIT credit will be considered only if the S corporation claimed a credit for tax on the corporate returns, and such claim was subsequently affirmatively granted by the Director.
In any event, neither party addressed the applicability or language of these post-2006 GIT regulations. Therefore, the court will not make any findings in this regard.

 Indeed, in S.M.Z. Corp., supra, it was the Director who sought to provide a CBT Section 8 adjustment even though he had argued at the Tax Court level that he has no such authority as to a 100% allocating corporation. The Director subsequently conceded that he had "incorrect[ly]" argued the "theory that ... Section 8 was not available to a taxpayer unless that taxpayer had the right to allocate under [CBT] Section 6.” 193 N.J.Super, at 309-10, 473 A.2d 982.

 Since this case involves a mandatory 100% allocation to New Jersey under the CBT laws effective for tax year 2006, for which the CBT Section 8 relief would generally be only a credit for taxes paid to other jurisdictions, as opposed to a reduction of the corporate income, the court does not reach any conclusion or make any findings as to situations where the absence of information for making a Section 8 adjustment may have an impact on reduction of the corporate income itself.

 Cf. N.J.A.C. 18:35-1.5(c)(5) (using the term "jurisdiction” as opposed to "State” in defining income that is "allocated outside of New Jersey” for an S *483 corporation which allocates 100% income to New Jersey). This regulation was effective January 16, 2007.

 Pursuant to N.Y.C. Admin. Code § 11-1902, the City imposed a "commuter tax” only upon wages and self-employment net earnings of every nonresident individual working in the City. However, that tax was declared invalid in City of New York v. State, 94 N.Y.2d 577, 709 N.Y.S.2d 122, 730 N.E.2d 920 (N.Y.2000). See also 2006 Instructions for Form IT-203 (reflecting that the NYC tax to be reported on Lines 51 and 52 of IT-203 is for NYC residents or part-year residents).

 The GIT regulations addressing S corporation income taxable at the shareholder level made a similar addition. It states that "payment of a minimum tax to another state by an S Corporation does not fulfill the criteria of [N.J.A.C. 18:35-1.5(c)(5)], Therefore, income is not deemed to be S corporation income allocated outside of New Jersey for [GIT] purposes. If the taxpayer is required to file a personal income tax return in the other jurisdiction reporting S Corporation income, the taxpayer would not be eligible for a credit for taxes paid to the other jurisdiction.” N.J.A.C. 18:35-1.5(c)(6). This provision was added in 2008, effective September 15, 2008. N.J.A.C. 18:35-1.5(c)(5) defines *487 when income of a 100% allocating S corporation is deemed to be allocated outside New Jersey. See supra, n. 8.

 it should be noted that the retroactive application of a regulation is not objectionable unless it is a change in position or a reversal of an older one. Sorensen, supra, 184 N.J.Super. 393, 2 N.J.Tax at 470, 446 A.2d 213. Further, a regulatory amendment which clarifies the intent and scope of the regulation sought to be amended can be applied retroactively. Equipment Leasing & Finance Ass'n v. Director, Div. of Taxation, 24 N.J.Tax 527, 539 (Tax 2009) (holding that the Director’s amendment to a CBT regulation as to application of a credit for alternative minimum tax "simply set forth explicitly what previously had been implicit in the method of calculation and application of the AMA credit pursuant to the CBT-100 form and Form 315”). Arguably, N.J.A.C. 18:35-4.1 (a)(3)(ii)(2) can be retroactively applied because, as of 2006, the regulation had already provided that the credit was to be determined pursuant to the allocation rules applicable at the corporate level under the CBT Act. Since the rules interpreting the CBT Section 8 relief requires that the 100% allocating corporation must have actually paid tax measured by income in another jurisdiction in order to be eligible for a credit, the Director could properly deny such relief if the tax paid to the other jurisdiction was not based upon income.
Nonetheless, an “an administrative agency may not, under the guise of interpretation, extend a statute to give it a greater effect than its language permits,” thus, a regulation which "flout[s] the statutory language and undermine[s] the intent of the Legislature” is invalid. Richard's Auto City v. Director, Div. of Taxation, 140 N.J. 523, 530, 659 A.2d 1360 (1995) (internal quotations omitted). An electing S corporation is generally not subject to a *488 corporate level tax because it is treated as a pass-through entity, and the tax on the entity’s income is captured by imposing an income tax upon the individual shareholder. Some states may impose a minimum tax for the privilege of a corporate entity doing business, or similar to New Jersey and New York, when the corporate income tax at the reduced rate is lower than the minimum tax. A rigid interpretation of the minimum tax provisions in N.J.A.C. 18:35— 4.1 (a)(3)(ii)(2) loses sight of the significance of this taxing mechanism, and can result in a denial of a GIT credit despite the fact that the individual shareholder is taxed twice or multiple times on the same income.